**In re CARLTON FRUIT COMPANY, Debtor.**

**CARLTON FRUIT COMPANY, Plaintiff,**

v.

**STATE of FLORIDA DEPARTMENT OF CITRUS, Defendant.**

Bankruptcy No. 87–843–8P1.

Adv. No. 87–502.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 8, 1988.

Cindy L. Turner, Tampa, Fla., for plaintiff.

J. Hardin Peterson, Jr., Lakeland, Fla., for defendant.

Kristen C. Chadwell, State of Florida Dept. of Citrus, Joan B. Simons, Lakeland, Fla., for State of Fla., Dept. of Citrus.

## ORDER ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case and the matters under consideration are two Motions filed by the Defendant named in the above-captioned adversary proceeding, the State of Florida Department of Citrus (Department). The Department filed a Motion which seeks a dismissal of Counts I and II of the Complaint and a Motion which seeks a summary judgment on all counts of the Complaint. The Complaint initiating this adversary proceeding was filed by Carlton Fruit Company (Carlton), the Chapter 11 Debtor, and is entitled "Complaint for Preliminary and Permanent Injunction, to Enforce the Automatic Stay, and for Sanctions". In Count I of the Complaint, Carlton seeks a declaration by this Court that the automatic stay imposed by § 362 of the Bankruptcy Code is in full force and effect and seeks an order prohibiting the Department from imposing any additional conditions to the issuance of a citrus fruit dealer's license to Carlton. In Count II Carlton seeks an imposition of sanctions against the Department for allegedly violating the automatic stay. Carlton also contends in Count II that the Department willfully and knowingly violated Section 525(a) of the Bankruptcy Code which prohibits discriminatory treatment of debtors. In Count III of the Complaint, Carlton seeks a preliminary and permanent injunction pursuant to § 105 of the Bankruptcy Code on the basis

that the action of the Department would cause grave and irreparable damage to Carlton unless the Department is prohibited from requiring Carlton to meet certain conditions before it can obtain a dealer's license to deal in citrus products.

It is the contention of the Department that the claims set forth in Count I and Count II of the Complaint are legally defective and are not the type of claims for which relief can be granted based on the automatic stay provisions of § 362(a) of the Bankruptcy Code. Therefore, so contends the Department, it is appropriate to dismiss the claims set forth in those two counts. In addition, the Department also urges in its Motion for Summary Judgment that the underlying and controlling facts are without dispute thus there are no genuine issues of material facts and that the Department is entitled to a judgment in its favor as a matter of law on the claims set forth in all counts of its Complaint. The relevant portion of the record reveals the following undisputed facts:

Carlton has been a licensed citrus dealer since 1972. The business of Carlton included buying unprocessed, unpacked citrus fruit from growers in addition to providing harvesting and hauling services and selling harvested citrus to juice processing plants. It appears, and it is without dispute, that Carlton is a citrus fruit dealer within the meaning of Fla.Stat. § 601.55 which requires every person who acts as a citrus fruit dealer to apply for and obtain a current license from the Department for each shipping season. Fla.Stat. § 601.61 also provides that the dealer applying for the license must post a bond with the Department of Agriculture and Consumer Services in an amount fixed by the Citrus Commission, which bond cannot exceed $100,000. The purpose of the bond is, of course, to protect growers of citrus fruit and to assure that the citrus products purchased by dealers will be paid. Obviously, this statute was not designed generally for the protection of the public welfare, health or safety but clearly to regulate the trading of citrus products and, indirectly, the citrus production industry in this state. It appears from the verified Complaint, and it is admitted, that on September 25, 1987, Carlton applied for a citrus dealer's license for the 1987–88 season. On October 20, 1987, the application of Carlton was considered by the Florida Citrus Commission (Commission), the agency of the State of Florida authorized by law to act on such applications. At this meeting, the Commission voted to defer action on Carlton's application until the December meeting in order to allow the Commission to review Carlton's Plan of Reorganization which was to be filed by December 1, 1987. The Commission reconvened on December 16, 1987 at which time the Commission approved the granting of a dealer's license to Carlton provided, however, that as condition precedent, Carlton post a cash bond with the Department of Agriculture and Consumer Services in the sum of $100,000, which, as noted earlier, is the maximum bond permitted by Fla.Stat. § 601.61. While it does not appear from the Complaint, it is without dispute that Carlton was also required, as an additional condition to the license, to purchase citrus fruit only for cash and not on credit. According to the Affidavit submitted by James P. Carlton, President of Carlton Fruit Company, in support of a request for preliminary and permanent injunction, his license has been routinely approved every year since 1976 and the range of the bonds during the same period was between $32,000 and $80,000 but never in the past eleven years was Carlton ever required to post the maximum bond allowable by law nor was it ever required to purchase citrus fruit only for cash. The record also contains the Minutes of the Commission meeting held on December 16, 1987. According to the minutes, Carlton was represented by counsel who stated, inter alia, that Carlton was doing business in the usual way; that the level of its operation was essentially the same as the previous year; and there was no change in the circumstances in the operations of Carlton. The minutes fail to reflect any discussion by the Commission concerning the impact of the pendency of the Chapter 11 case and fails to indicate the reason why the Commission imposed such harsh re-

quirements on Carlton as a condition precedent to obtain a dealer's license. While it does not appear from the record, counsel for the Commission indicates that the Commission had the benefit of the financial statement submitted by Carlton, together with the application concerning the past and current operation of Carlton, the manner and nature Carlton was doing business, the management of Carlton's business and the potential liabilities which Carlton might incur in the future if authorized to function as a citrus fruit dealer. Counsel for the Commission points out that never did the Commission require a reaffirmance of pre-Petition debts by Carlton and its decision to require Carlton to post a bond in the maximum amount allowable by law and requiring cash transactions only was based fully considering the factors noted and the fact that Carlton is in Chapter 11 did not play any role in its decision-making process. It appears from the Affidavit of Mr. Carlton that Carlton, during the season of 1986–87 handled 453,445 boxes of citrus fruit and it is evident that the number of boxes which Carlton intends to handle during the current season is 73,000, representing a decrease in excess of 380,000 boxes. It appears that the bond required by the Commission during the previous season when Carlton handled six times more boxes than they propose to handle during the current season was $37,000. Counsel for Carlton intimates that there had been numerous claims filed against Carlton in excess of $500,000.

Basically these are the controlling facts which appear from the record on which Carlton bases its claims for relief set forth in the three counts of the Complaint.

▮ Considering first the claims set forth in Counts I and II, both of which involve an alleged violation of the automatic stay, it is clear and this Court is satisfied that there is nothing in this record which warrants the finding that the Commission did anything whatsoever which violated the automatic stay even assuming that the stay is applicable. The proceeding before the Commission was not a revocation of the license but involved a proceeding voluntarily instituted by Carlton who applied for a dealer's license and the Commission did in fact grant the license, albeit under the conditions outlined earlier. One would be hard pressed to accept the proposition that imposition of conditions for the issuance of a dealer's license, conditions which are clearly authorized by law, could possibly be construed to be a violation of the automatic stay. Moreover, this Court seriously doubts that the automatic stay applies to these proceedings before the Commission at all, because whatever acts were performed by the Commission were performed pursuant to the regulatory power of the State designed to control and regulate the citrus industry, therefore within the exceptive provisions of § 362(b)(4) of the Bankruptcy Code. In support of its contention that the automatic stay applies, Carlton cites *In re Corporacion de Servicios Medicos Hosp.*, 60 B.R. 920 (D.Puerto Rico 1986); *In re Hoffman*, 53 B.R. 874 (Bkrtcy. D.R.I.1985). Even a cursory reading of these cases clearly indicates that the holdings in these cases are totally inapposite to the contention advanced by Carlton and furnish scant, if any, support for same. *In re Corporacion de Servicios Medicos Hosp.*, *supra*, involved an action by the Department of Health to terminate a contract with the Debtor and to revoke the Debtor's license to operate the hospital. The District Court, on appeal, held that the policy/regulatory exemption to the automatic stay did not apply to the Department's action to terminate the contract. The case involved a commercial transaction that is a contract which obviously had nothing to do with the police or regulatory power of a state. While the case also involved a revocation of a license, this case, unlike the case sub judice does not involve a revocation of a license at all but, on the contrary, involves imposition of conditions to the issuance of a license, application for which has been granted. The case of *Hoffman* dealt only with the trustee's power to sell a liquor license even though a state law prohibits a sale unless all taxes have been paid. The Court in *Hoffman* classified the state law's purpose as pecuniary rather than regulating and hence not within the

258

exception to the automatic stay. In *In re Beker Industries*, 57 B.R. 611 (Bankruptcy S.D.N.Y.1986), the Court held that action by the Florida Land and Water Adjudicatory Commission proceeding on the impact of phosphate mining operation on local roads was an exercise of regulatory power exempt from the automatic stay. In sum, this Court is satisfied that both claims in Counts I and II are, as a matter of law, insufficient as a basis to grant the relief sought.

■ This leaves for consideration the claim of Carlton that the action of the Commission by requiring, as condition for the license, a bond in the amount of $100,000 and prohibiting against credit transactions are in clear violation of § 525 of the Bankruptcy Code which prohibits discriminatory treatment of debtors by a government unit. § 525(a). This record is woefully inadequate to resolve the question in favor of the Commission as a matter of law. First, it is intimated by counsel for the Department that the action of the Commission was not based on Carlton's failure to meet its pre-Petition obligations and is unlike the case which was involved in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which involved a direct or indirect coercion to repay pre-petition debts. Carlton urges that the action of the Commission was based on other factors and like the case involved in *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984), the minutes of the Commission meeting in December really is not very enlightening on this point. While the Department facially considered only proper factors when it decided to impose the conditions involved, i.e. the financial condition of the Debtor, its previous method of operation, its ability to meet its future obligations, as well as its ability to function as a citrus dealer, the record also indicates that the Commission was seriously concerned about the plan of reorganization which was to be submitted by Carlton. It is without dispute that the initial meeting of the Commission was adjourned for the very purpose to enable the Commission to have the benefit of Carlton's plan of reorganization. Based on this fact it is not difficult to infer that the

Commission was also intimately concerned with the treatment which Carlton intended to accord to its pre-petition creditors. Moreover, while it is true that the schedule filed by Carlton indicates unsecured obligations in excess of $500,000, it is equally without dispute that during the previous season there were also claims filed against Carlton, albeit not in that amount, yet the Department did not impose similar conditions on Carlton before it was authorized to function as a dealer in citrus fruit.

Be as it may, however, this Court is satisfied that while the claims in Count I and Count II are without merit and should be dismissed, the claim based on the violation of § 525 cannot be disposed of in any summary fashion and requires an evidentiary hearing to establish whether or not the basis for the imposition of conditions by the Department as a condition precedent to the issuance of a dealer's license was based on the fact that Carlton is a debtor seeking relief under Chapter 11.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss Count I and Count II filed by State of Florida Department of Citrus be, and the same is hereby, granted and the claims set forth in the request to enforce the automatic stay and to impose sanctions for alleged violation of the automatic stay be, and the same is hereby, denied with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by State of Florida Department of Citrus concerning the claim of the alleged violation of § 525 be, and the same is hereby, denied.