**In re Linda Veronica BACON, Debtor.**

**Bankruptcy No. 97–11644DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 29, 1997.

Roger V. Ashodian, Delaware County Legal Assistance Assn., Chester, PA, for debtor.

Lloyd S. Markind, Stephen M. Hladik, Caplan & Luber, LLP, Paoli, PA, for movant.

Joseph Minni, Philadelphia, PA, Office of U.S. Trustee.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of Creditor Chester Housing Authority ("CHA") and its Receiver Robert C. Rosenberg, Esquire [1] for Relief from Stay (the "Motion") seeking to enforce its rights and remedies under a lease (the "Lease") with the debtor Linda Veronica Bacon ("Debtor") for a public housing unit located in Chester, Pennsylvania. Alleging

1. The Receiver was appointed by Order of the District Court for the Eastern District of Pennsylvania dated June 4, 1994 to replace the United States Department of Housing and Urban Development ("HUD") to "hold, protect, and preserve, manage and control" all real and personal property of CHA. Specifically, "[t]he Receiver shall rebuild CHA's capacity to manage and oversee its public housing program in accordance with applicable laws and regulations." Exhibit A to Memorandum of Law in Support of Motion. Pursuant to the federal receivership proceedings, landlord/tenant actions are adjudicated in the District Court.

both pre- and post-petition payment defaults under the Lease, it is admittedly the former that CHA seeks to remedy with an Order from this Court that would allow it to continue its eviction proceedings at the point they were interrupted by Debtor's bankruptcy filing.[2] In response, Debtor contends that if it were to do so, it would be violating § 525 of the Code which protects a debtor against discriminatory treatment by a governmental unit.

As the importance of the legal issue framed by the facts of this case surpasses the case itself, the parties requested and were granted leave to file extensive memoranda which have been received and reviewed. The matter is therefore ripe for decision.

## BACKGROUND

The relevant facts are simple and undisputed. CHA is a governmental entity that operates the public housing complex where Debtor resides. Pursuant to the Lease dated April 21, 1995, Exhibit M–1, Debtor agreed to a monthly rent of $187.00, a sum determined as a percentage of her income. The remaining rent is paid by a HUD subsidy. According to CHA's tenant account ledger, Debtor owed $9,967.76 as of the filing of her Chapter 7 bankruptcy petition on February 11, 1997. Exhibit M–7. Prior to the filing, CHA had secured a disposition from the Federal Court Master for Arbitration, United States Magistrate Judge Angell ordering Debtor's eviction, Exhibit M–2, followed by an Order of Eviction from United States District Judge Norma Shapiro dated January 24, 1997, Exhibit M–6. Eviction pro-

ceedings were stayed by the bankruptcy filing.

Gloria Satriale, Esquire was appointed Chapter 7 trustee in Debtor's case. She did not assume the Lease pursuant to § 365(d)(1) within 60 days of the order for relief.

## DISCUSSION

### A.

I begin my analysis by recognizing that this is a Chapter 7 case. Pursuant to § 365(d)(1), in a case under Chapter 7, if the trustee does not assume or reject an unexpired lease of residential real property within 60 days of the order for relief, the lease is deemed rejected. Not surprisingly, trustee Satriale took no action with respect to the Lease and accordingly it was deemed rejected on or about April 10, 1997. While there is considerable disagreement on the ultimate issue to be decided here, it is generally agreed (including by CHA in its Memorandum at 7) that the automatic rejection of a lease pursuant to § 365(d)(1) effects an abandonment of the lease to the debtor.[3] *In re Day*, 208 B.R. 358, 365 (Bankr.E.D.Pa.1997); *In re Rosemond*, 105 B.R. 8, 9–10 (Bankr. W.D.Pa.1989); *In re Szymecki*, 87 B.R. 14, 15 (Bankr.W.D.Pa.1988); *In re Knight*, 8 B.R. 925, 929 (Bankr.D.Md.1981). *See also* Jay L. Westbrook, *A Functional Analysis of executory Contracts*, 74 Minn. L.Rev. 227, 248 (1989)("The contractual rights are property of the estate and, as with any property, the trustee will realize upon them or abandon them.") *Contra In re Couture*, 202 B.R. 837, 841–42 (Bankr.D.Vt.1996). As the lease is

**2.** If there are post-petition defaults, a disputed issue in this case, CHA would be granted relief from stay to commence new enforcement proceedings based on the new default. Since there are certain requirements of notice and hearing afforded the tenant upon default and prior to eviction, a new enforcement action would delay CHA's ability to secure complete relief. If a new enforcement action was all CHA sought to achieve in this case, it could have awaited the passage of time since the Debtor's discharge is accompanied by the automatic termination of the stay. 11 U.S.C. § 362(c)(2)(C). Indeed a review of the docket in this case reveals that the discharge was granted after the hearing and during the contemplated briefing period in this contested matter. Thus, the stay has lifted. However,

since CHA seeks to enforce its remedies under the Lease with respect to pre-petition monetary defaults and the Debtor contends that would be a violation of § 525, I do not consider the Motion to be moot. I will not, however, address the alleged post-petition arrears since CHA is free by reason of the termination of the stay to enforce its remedies with respect to such a default if one exists today.

**3.** The Code treats non-residential and residential leases differently upon rejection, requiring the trustee to deliver the non-residential real property to the lessor but imposing no such requirement with respect to residential real property. 11 U.S.C. § 365(d)(4).

then no longer property of the estate, bankruptcy courts readily grant private landlords relief from stay to exercise their state law remedy of ejectment as a result of contractual defaults under the rejected lease. And those landlords who do not seek relief need only await the discharge which acts to terminate the stay, § 362(c)(2)(C), to enforce their rights under the lease other than the right to collect the discharged debt.[4]

The reason for this result was articulated long ago by former Bankruptcy Judge Emil Goldhaber in *In re Rush,* 9 B.R. 197 (Bankr. E.D.Pa.1981), a case in which the debtor had argued that the landlord could not proceed against her to evict for failure to pay prepetition rent dischargeable in her Chapter 7 case. Referring to § 524(a), the Court stated:

It is crystal clear from that language that a discharge only prevents a creditor from proceeding against the debtor on the debt as a personal liability.... Here the discharge of the debtor will eliminate the debtor's personal liability for that debt but does not eliminate any of the other consequences of that debt. Therefore, since the failure to pay rent was a breach of the lease, we conclude that the landlord may pursue any remedy to which it is entitled under state law for that breach *except* a remedy against the debtor personally to collect the money due. Such action would not be contrary to the provisions of § 524(a) as stated above.

9 B.R. at 200. Finding that the landlord did not seek to proceed against the debtor personally but rather to proceed in rem against the leased premises, the *Rush* Court found no violation of the discharge injunction of § 524(a) and granted the landlord's requested relief. *See also* 4 Collier on Bankruptcy ¶ 524.02[1] at 524–13–14 (15th ed. rev.1997). Thus, but for the Debtor's contention that § 525(a) affords her some additional protection, relief from stay would be granted to CHA to enforce its rights to the leased premises without regard to the dischargeability of the prepetition rent.

**B.**

Before addressing the ultimate question concerning the applicability of § 525(a) to protect public housing benefits, I must make a threshold determination concerning the viability of the Lease for if the Lease has been terminated, as CHA contends, § 525(a) cannot help this Debtor even if it is applicable to this situation. It is first important to note that lease rejection is not synonymous with lease termination, contrary to the view expressed by CHA. The former is a bankruptcy concept that determines whether the estate will administer the lease asset. Jay L. Westbrook, *supra* at 228 ("assumption and rejection are merely bankruptcy terms for performance or breach by the trustee"). As stated by another often cited scholar of executory contracts in bankruptcy:

Rejection's effect is to give rise to a remedy in the non-debtor party for breach of the rejected contract, typically a right to money damages assertable as a general unsecured claim in the bankruptcy case. Rejection has absolutely no effect upon the contract's existence; the contract is not cancelled, repudiated, rescinded, or in any fashion terminated.

Michael T. Andrew, *Executory Contracts Revisited. A Reply to Professor Westbrook,* 62 U. Colo. L.Rev. 1, 15 (1991).

Termination, on the other hand, is a state law concept that is prescribed by the common law or statutes of the state in which the property is located. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See Robinson v. Chicago Housing Authority,* 54 F.3d 316, 317 (7th Cir. 1995); *In re Couture,* 202 B.R. 837, 839 n. 3 (Bankr.D.Vt.1996); *Sudler v. Chester Housing Authority (In re Sudler),* 71 B.R. 780, 785 (Bankr.E.D.Pa.1987). The applicable state law to be referenced here is that of

---

4. As this is the framework for a Chapter 7 lease rejection, I find the arguments concerning the interplay between the § 365(d) right of assumption and the § 525 right to non-discriminatory treatment irrelevant except to suggest the consequences of Debtor's requested ruling in a Chapter 13 case. The Chapter 7 debtor has no § 365 right of assumption; it is a right of the trustee. Accordingly the cases that analyze the debtor's rights in terms of lease assumption are not helpful in a Chapter 7 context.

Pennsylvania.[5] In Pennsylvania, it is clear that a lease is not terminated until the eviction of the lessee is completed. *Sudler, supra* (referring to Pa.R.C.P.D.J. 518 known as the "pay and stay" rule which allows cure of monetary default until the eviction). In this case, CHA, poised with Judge Shapiro's Order to evict,[6] was stayed by the bankruptcy filing before eviction could be accomplished. Thus, under Pennsylvania law, the Lease had not been terminated as of the filing of the bankruptcy case. Had the eviction been completed, my analysis would stop at this point since it is clear that bankruptcy cannot breathe life into a terminated lease. *Kopelman v. Halvajian (In re Triangle Laboratories)*, 663 F.2d 463, 468 (3d Cir.1981)(*citing In re Butchman*, 4 B.R. 379, 381 (Bankr. S.D.N.Y.1980)("When a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow."))

Since the Lease had not been terminated as of the bankruptcy filing, I turn now to the question of whether a public housing landlord should be granted relief from stay to prosecute an eviction action where the tenant's sole default is non-payment of prepetition rent and the lease has been rejected in the tenant's bankruptcy case.[7]

### C.

Section 525(a) protects a debtor against discriminatory treatment. It states that ex-

cept as provided in certain laws not applicable here:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

Section 525(a) protects licenses, permits, charters, franchises and "other similar grants" thereto. The cases that have applied § 525(a) in the public housing context have concluded, usually without much discussion, or appear to assume without any discussion, that public housing is a governmental grant. Debtor finds support for that conclusion in the legislative history of § 525(a) which states:

> In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of

---

5. For this reason, the cases cited from other jurisdictions on the issue of whether or not a lease has been terminated are not relevant because the state laws are not the same as the law of Pennsylvania.

6. Contrary to CHA's contention, that Order did not find the lease had been terminated but merely recited that CHA "has brought proceedings to terminate the Lease." Thus, CHA's contention that the District Court's final eviction Order is dispositive in this matter is without merit.

7. The Debtor accurately notes that I have addressed this question before in *In re Jackson*, No. 94–18512DWS (May 4, 1995). In that unpublished decision, I answered that question in the

negative, joining those courts that have applied ¶ 525(a) to tenants of federally-subsidized housing to protect what have been characterized as their "governmental grant of a rent subsidy." *See, e.g., Curry v. Metropolitan Dade County (In re Curry)*, 148 B.R. 966, 970–71 (S.D.Fla.1992); *In re Sudler, supra*. As I stated in Jackson, "[t]o deny the Debtor her right to public housing based on her failure to pay pre-petition rent arrears dischargeable in bankruptcy runs afoul of the protections of § 525(a)." Opinion at 4. Having revisited that issue in the context of this case, I affirm my view that § 525(a) does protect a debtor's grant of federal housing benefits but for reasons not fully expressed in *Jackson* which will be addressed below.

discrimination. The courts have been developing the *Perez* rule.[8] This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect a debtor's fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

H.R.Rep.No. 595, 95th Cong., 1st Sess. pp. 366–67, 1977 U.S.Code Cong. & Admin.News pp. 5963, 6321–6323; S.Rep.No. 989, 95th Cong. 2d Sess. 81, 1977 U.S. Code Cong. & Admin.News pp. 5787, 5867.[9]

Relying on this legislative history, the Court in *In re Gibbs*, 9 B.R. 758, 764 (Bankr. D.Conn.), *supplemented* 12 B.R. 737 (Bankr. D.Conn.1981), *aff'd in part and remanded in part on other grounds*, 76 B.R. 257 (D.Conn. 1983), found that "an obvious example of discrimination is presented ... where the Authority will evict Gibbs solely because she sought relief under bankruptcy law, became discharged of a debt of $74.00 to the Authority and refuses to reaffirm said debt." The city housing authority was thus permanently enjoined from enforcing its judgment for possession. In *Sudler*, Chief Judge Scholl, relying on § 525(a) and citing to *Gibbs*, found that a public housing authority may not deny "a future public housing tenancy to a debtor-tenant on the basis of a prior rent obligation which has been discharged in bankruptcy." 71 B.R. at 786.[10] *Gibbs* and *Sudler* provided authority to the Court in *In re Szymecki*, 87 B.R. 14 (Bankr.W.D.Pa.1988), for a like conclusion. Finally in *In re Curry*, 148 B.R. at 972, the district court specifically adopted the reasoning of *Sudler* in overruling the bankruptcy court's interpretation of § 525(a). Thus, until very recently, the prevailing view of the courts addressing the specific issue before me today has been that § 525(a) will protect a debtor from eviction from a public housing unit where the basis of that eviction is a prepetition monetary default, the debt of which is dischargeable in the debtor's Chapter 7 case.

■ A contrary view, albeit *dicta*, was expressed by another Bankruptcy Court in this Circuit in *In re Lutz*, 82 B.R. 699 (Bankr. M.D.Pa.1988), a Chapter 13 case. In that case, the Court found that the landlord was a privately-owned entity so that § 525(a) was inapplicable. Notwithstanding that fact, the Court proceeded to opine on the § 525(a)

**8.** Section 525(a) codified the result of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez*, the Supreme Court found a state law that allowed suspension of a driver's license for failure to satisfy a tort judgment arising out of the operation of the motor vehicle and otherwise dischargeable in bankruptcy to conflict with federal bankruptcy law. Quoting its decision in *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), it reasoned that:

'(o)ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'

402 U.S. at 648, 91 S.Ct. at 1710–11. The Court concluded that notwithstanding the state's articulated purpose to promote highway safety,. the effect of the statute was to frustrate the federal objective of providing relief to debtors through the bankruptcy discharge, mandating its invalidation under the supremacy clause of the United States Constitution.

**9.** CHA likewise finds support in the legislative history for its view that public housing is not a grant similar to a license, permit, charter, or franchise by noting the observation that:

The section is not so broad as a comparable section proposed by the Bankruptcy Commission, H.R. 31, 94th Cong., 1st. Sess. § 4–508 (1975), which would have extended the prohibition to any discrimination, even by private parties.

*Id.* However, the legislative history then quickly notes:

Nevertheless, it is not limiting either, as noted. The courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy.

*Id.*

**10.** Presaging his recent decision in *In re Day*, 208 B.R. 358 (Bankr.E.D.Pa.1997), a Chapter 13 case, Judge Scholl also stated that "the strong public policy of 11 U.S.C. § 525 overrides the potential requirement of 11 U.S.C. § 365(b)(1) that a debtor assuming a lease must cure any pre-petition defaults or otherwise provide adequate protection to the landlord." 71 B.R. at 787. As stated above, I do not view the relationship between these two sections to be germane to the resolution of a case under Chapter 7 where lease assumption by the debtor is not an issue.

question.[11] Seeking guidance from the *Perez* decision, the Court distinguished discriminatory conduct, *i.e.*, withholding various grants and privileges as a means of coercing payment of discharged debt, from the enforcement of contractual terms. According to the *Lutz* Court:

[Section 525] does not cure contractual defaults and does not require governmental units to continue a contractual relationship with a debtor when, pursuant to the terms of that contract, the prepetition default constitutes cause for terminating the contractual relationship. Unless it is shown that the creditor was attempting to collect a prepetition debt, or was otherwise discriminating against the debtor, a governmental unit's termination of a lease based on a prepetiton default is not per se a violation of section 525.

*Id.* at 705. Notably, the Court's focus is on the absence of discriminatory conduct, suggesting that had it been evidenced and the landlord a governmental entity, § 525(a) could be applicable to the grant of public housing benefits.

In a pair of Chapter 7 cases emanating from the Western District of Pennsylvania Bankruptcy Court last year, § 525(a) was found not to preclude public housing landlords from securing relief from stay to evict Chapter 7 debtors. In *In re James*, 198 B.R. 885 (Bankr.W.D.Pa.1996), Chief Judge Markowitz found that § 525(a) was not violated because the housing authority's action was not taken "solely" because the debtor sought to have her prepetition debt discharged. Rather he concluded that the housing authority sought relief from stay because the lease was deemed rejected under § 365(d)(1) and as such, the debtor had no right to occupy the apartment and the housing authority had no obligation to allow her to remain in possession. The Court found this result mandated because of its view that the more specific § 365(d)(1) trumped the general provisions of § 525(a). Focusing on the "solely because" language and the legislative history, the Court opted for a narrow construction of § 525(a),[12] rejecting the *Sudler* approach which finds a showing of discrimination sufficient where the bankruptcy filing plays a "significant role" in accounting for adverse action by the governmental entity. *Id.* at 887. Like the *Lutz* Court, the *James* Court does not specifically address whether a public housing lease is a grant within the purview of § 525(a). However it presumably finds it to be so since it would not have needed to analyze the government's purpose otherwise.

Two weeks later in *In re Collins.* 199 B.R. 561 (Bankr.W.D.Pa.1996), Judge McCullough concurred in and adopted the holdings and rationale in *James* and likewise expressly declined to follow *Sudler, Szymecki* and *Curry*. His analysis, however, set forth reasons in addition to the "solely because" language relied upon by *James*. First, recognizing an overlap between public housing and Pennsylvania landlord/tenant laws and

---

**11.** The Courts in *Housing Authority of City of Decatur v. Caldwell (In re Caldwell)*, 174 B.R. 650 (Bankr.N.D.Ga.1994) and *Robinson v. Chicago Housing Authority (In re Robinson)*, 169 B.R. 171 (N.D.Ill.1994), *aff'd on other grounds*, 54 F.3d 316 (7th Cir.1995), also offered their views on the applicability of § 525(a) to public housing leases although the leases in both these cases had been terminated under applicable state law. *Caldwell*, expressly declining to adopt the reasoning of *Curry, Gibbs, Sudler* and *Szymecki*, refuses to view the eviction as a result of the bankruptcy but rather finds it a result of housing law that permits the housing authorities to demand that rent be paid to maintain a lease and assume it after bankruptcy. In this Court's view, § 525(a) must yield to § 365's cure requirement for assumption. However, the Court concedes, if the debtor were to reapply for public housing and was denied solely because of her bankruptcy filing or insolvency, § 525(a) could be invoked.

In *Robinson*, the Court found that the housing authority did not seek to evict the debtor solely because she failed to pay a dischargeable debt but "simply because she stopped paying rent," and refused to sanction a rule that would allow tenants in federally subsidized housing to forgo rent without consequence. *Id.* at 175.

**12.** The Court citing *Watts v. Pennsylvania Housing Finance Company (In re Watts)*, 876 F.2d 1090 (3d Cir.1989) and *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 85 (3d Cir.1988), found support for this construction of § 525(a) in decisions of the Third Circuit Court of Appeals evidencing an inclination to construe § 525(a) narrowly in other contexts. These cases, decided after the Bankruptcy Court's decisions in *Sudler* and *Szymecki*, are discussed below.

§ 525(a), the Court held that federal housing law overrides federal bankruptcy law because the former is more specific than the latter. *Id.* at 565. Second, the Court posited that the debtor's broad reading of § 525(a) would lead to the unintended result of excusing debtors (but not trustees) from the cure provisions of § 365(b)(1).[13] Third, and affirming the rationale of *Lutz*, the Court concluded that:

> § 525(a), while requiring a governmental creditor to continue to provide certain "grant[s]," nevertheless does not require that such entity continue in particular prior contractual relationships with a debtor provided that it continues to provide those "grant[s]." *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 85 (3d Cir.1988).[14] The Housing Authority in this case merely sought to end its particular contract with the debtor in accordance with the terms of such agreement while at the same time, on a space available basis, continuing to provide to the debtor an

identical housing subsidy. We find that § 525(a) does not require any more than this.

*Id.* at 565–66.[15]

As evidenced by the foregoing, there is a diversity of analytical underpinnings to the conflicting decisions on the applicability of § 525(a) to prevent eviction of a public housing tenant based on failure to pay a dischargeable debt. Regretfully, neither the Third Circuit Court of Appeals, nor any circuit court of appeals for that matter, has been presented with this precise issue. However, in formulating a construct for the application of § 525(a) to the instant facts, I am mindful of certain general principles that the Third Circuit has enunciated in considering the application of § 525(a) in another context. In *Watts, supra* note 12, the Court rejected the debtors' invocation of § 525(a) to require the Pennsylvania Housing Finance Agency to continue to fund mortgage payments on behalf of participants in a loan

---

13. The *Collins* Court focused on rejection and the abandonment of those leases to the debtor in not only Chapter 7 but Chapter 11 and Chapter 13 and the "windfall" to the debtor of being allowed to take advantage of the lease notwithstanding the contractual default. The Court did not mention the other possibility, recognized in *Day*, that absent assumption or rejection the lease will pass through bankruptcy to the reorganized debtor and the prepetition monetary defaults will be discharged. 208 B.R. at 367 (*citing In re Polysat*, 152 B.R. 886, 890 (Bankr.E.D.Pa. 1993)). Judge Scholl then concludes that the landlord will be prohibited from enforcing its in rem remedy because of the protection afforded its tenant by § 525(a). *Day* thus gives effect to the view expressed in *Sudler* that § 525(a) overrides the cure requirements of § 365(d)(2). Presumably the landlord's right to seek assumption or rejection pursuant to § 365(d)(2) also falls under this expansive interpretation of § 525(a).

14. While I concur with the *Collins* Court in this regard, I do not find *Brown*, a case dealing with §§ 362 and 524, not § 525 as the creditor was not a governmental entity, authority for the proposition stated. Section 525(a), where applicable, provides a layer of protection to a debtor in addition to the discharge injunction of § 524. The breadth of that protection is what courts have been attempting to define.

15. Most recently, the Bankruptcy Court for District of Vermont weighed in on the subject, albeit also gratuitously since the lease in question was found to have been terminated under Vermont

law. In *In re Couture*, 202 B.R. 837 (Bankr.D.Vt. 1996), the Court stated that even if the lease had survived the filing, it would have terminated sixty days thereafter when it was deemed rejected by the trustee's failure to assume it. "Bankruptcy is the breach that terminates the lease, giving the creditor a claim and the debtor a discharge." *Id.* at 842. As such, the *Couture* Court would treat a rejected lease the same as one terminated prior to the bankruptcy filing. While § 365(g) provides that rejection of a lease not assumed within the applicable statutory period constitutes a breach immediately before the filing of the petition, I respectfully disagree that the breach terminates the lease. To so hold would be to find that a lease otherwise not in default under state law would be terminated by the trustee's failure to assume it. *See Knight*, 8 B.R. at 929. Again quoting Professor Andrew:

> When an executory contract or lease is not assumed by the estate, the 'breach' rule simply coordinates the treatment of the non-debtor party with that of all other creditors by creating a presumption, conclusive for claims allowances purposes, that the debtor will not perform. The 'breach' rule thus is not in any sense designed to diminish the non-debtor's rights vis-a-vis the estate, but rather to buttress them. relief to the debtor is correspondingly enhanced, because the debtor's obligation on the contract will be within the scope of the discharge.

Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding Rejection*, 59 U. Colo. L.Rev. 845, 873 (1988).

assistance program who had filed for bankruptcy. Loan payments are suspended during bankruptcy when foreclosure is prohibited by the automatic stay; they may resume, however, if the stay is lifted and foreclosure imminent. The Court found that the mortgage financing at issue in *Watts,* like the credit guarantee at issue in *In re Goldrich,* 771 F.2d 28, 30 (2d Cir.1985), was not a "similar grant" under § 525(a). While recognizing Congress' intention that the enumerated situations to be protected by § 525(a) be expanded, the Court nonetheless limited such expansion to situations analogous to those enumerated in the statute. Thus, the Court found no merit in the debtors' contention that the mortgage financing was part grant and part loan where the "grant" (*i.e.,* deferral of interest and below market rate interest) did not resemble a license, permit, charter or franchise. 876 F.2d at 1093 n. 2. Moreover, the Court noted that

> [E]ven if we were ... to venture beyond the confines of the language of the statute, we do not believe that the suspension of the mortgage financing at issue in this case undermines the 'fresh start' policy of the Code. While the challenged provision of HEMAP suspends mortgage assistance during bankruptcy because foreclosure is prohibited, assistance can be reinstated once the stay is lifted if foreclosure is still threatened; hence, the debtor's fresh start is not affected. Although plaintiffs complain that 'Late charges and other foreclosure costs' accrued while loan payments were suspended, ... the fresh start policy does not require the State to insulate a debtor from any and all adverse consequences of a bankruptcy filing. Ultimately what the plaintiffs seek is a requirement that PHTA use the limited resources in the Homeowner's Emergency Assistance Fund to continue paying their mortgages, to the possible detriment of other financially distressed homeowners, when foreclosure on

their own homes is prohibited under the Bankruptcy Code.

*Id. at* 1094 (citations omitted).

*Sudler* and its progeny are conceptually inconsistent with the Third Circuit's reading of § 525. These cases in effect equate discharge of the debt with payment of the debt when the creditor is a governmental entity.[16] *See* D. Keating, *Offensive Uses of the Bankruptcy Stay,* 45 Vand. L.Rev. 71, 101–106 (1992). As such, they go beyond the harm sought to be ameliorated in *Perez,* the result of which is codified as § 525(a). In *Perez,* the Supreme Court held that the state could not refuse to renew a driver's license for nonpayment of a tort judgment that had been discharged in bankruptcy. A contrary result was inconsistent with the fresh start principles of a bankruptcy discharge. Notably the debtor did not seek relief from the judgment creditor, whose coercive action was prohibited by §§ 362 and 524, but rather the government that was conditioning the availability of a license on the existence of the unpaid judgment. Thus, the issue in § 525(a) is not collection of discharged debt, ably dealt with in other sections, but refusal to deal with the debtor because of his bankruptcy and its consequences. While there is no proscription on a private party's refusal to deal, there is such a prohibition when the party is a governmental entity and the dealings are in the nature of licenses, permits, charters, franchises or similar grants for due to the exclusivity of those benefits, their absence will impair the debtor's fresh start.

Instructive in defining the parameters of § 525(a) is the analysis of my colleague Judge Bruce Fox in *In re Saunders,* 105 B.R. 781 (Bankr.E.D.Pa.1989). Recognizing that § 525(a) was not intended to be another manifestation of the automatic stay and finding support for his view in *Perez.* he stated:

> Section 525(a) instead was intended to reach non-creditor governmental (or quasi-

---

**16.** Moreover, their logical extension in Chapter 13 is to read § 525(a) as overriding § 365, a proposition I find no support for in the Code, legislative history or principles of statutory interpretation. I particularly find questionable the conclusion of *Curry* that § 525(a) is more specific than § 365(d)(2) and, consequently, that under well recognized principles of statutory construc-

tion, it must control the conflicting more general provision. Rather I agree with CHA, *citing James,* 198 B.R. at 890, that §§ 356 and 525(a) are only in conflict by the expansive reading of § 525(a), and in any event § 365 is clearly more specific than § 525(a). CHA Memorandum at 14. *See Couture,* 202 B.R. at 844; *Caldwell,* 174 B.R. at 654; *Collins,* 199 B.R. at 566.

governmental) entities that, in their quest to protect the public interest, wrongfully discriminate against debtors and frustrate the "fresh start" policy of the bankruptcy code by denying property interests not obtainable through the private sector. *Cf. In re Exquisito Services, Inc.,* 823 F.2d 151 (5th Cir.1987) (while § 525(a) does not prohibit all governmental discrimination, it does bar a governmental refusal to renew food services contract where that contract is awarded under a program designed to provide governmental assistance to small and minority owned businesses). Unless the governmental entity was acting as an agent for a creditor, *see In re Colon* [, 102 B.R. 421 (Bkrtcy.E.D.Pa. 1989)], such conduct would not run afoul of § 362. *See Matter of M. Frenville Co.,* 744 F.2d 332, 335 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (automatic stay does not apply to entity that holds no prepetition claim). *See also Taylor v. First Federal Sav. & Loan Assoc.,* 843 F.2d 153, 154 (3d Cir.1988).

*Id.* at 787.

Consistent with this analysis, it is helpful to separate CHA's interest as a creditor and role as grantor of a public benefit.[17] As a creditor, CHA seeks to implement its in rem remedies against the leasehold by evicting the Debtor. The debtor/creditor relationship is not implicated by § 525(a) so long as it is not being utilized to deprive the Debtor of a protected grant. CHA acknowledges that it does not seek to preclude Debtor from exercising her right to participate in public housing programs for which she is otherwise eligible. Were that the case, § 525(a) would be applicable since the right to participate in the public housing program is a "similar grant." To find public housing benefits beyond the reach of § 525(a) protection would allow public housing authorities to forever deny participation to otherwise eligible persons because of a bankruptcy filing or unpaid discharged debt absent separate regulation on the subject. This is plainly contrary to the fresh start principles of the Code. And indeed none of the cases denying § 525(a) protection to a public housing tenant has held or suggested that it cannot be invoked upon a housing authority's refusal to grant public housing benefits to a debtor with unpaid, but discharged, debt to the landlord.

This focused definition of the "grant" avoids the difficult interpretation of the "solely because" requirement which has resulted in some decisions that are hard to legally or factually rationalize. *See, e.g., Robinson,* 169 B.R. at 176 (eviction not solely because tenant failed to pay dischargeable debt but because she stopped paying rent); *James,* 198 B.R. at 888 (eviction not solely because of the failure to pay a dischargeable debt but rather because the lease is no longer in effect due to its deemed rejection of the lease pursuant to § 365(d)(1)[18] and because of the housing authority's duty to taxpayers to ensure that tenants pay rent and obligation to other applicants to make housing available to them). The illusory distinction between seeking eviction for not paying a dischargeable debt (*i.e.,* prepetition rent) as opposed to eviction for stopping the payment of rent evidences the slippery analytical slope of this approach. However, so long as CHA's in rem remedies are not proscribed by § 525(a), it is free to exercise its contrac-

---

**17.** I respectfully disagree with my colleague Chief Judge Scholl on this critical point. Where he views the protected § 525(a) "grant" as the debtor's public housing lease including the contract and its subsidized rent component, *see Day,* 208 B.R. at 366, I view the "grant" as a right to participate in the public housing program. The difference is more than semantic for under my construct the debtor has no specific interest in her leasehold and the landlord does not forfeit its remedies. Moreover, it is not inconsistent with *In re Exquisito,* 823 F.2d 151 (5th Cir.1987), cited by *Day* in support of its holistic theory since the refusal to renew the contract food services based on the debtor's status would have been tantamount to denying the debtor participation in the government program. Eviction from the leasehold does not have the same result since the Debtor is eligible to reapply for housing.

**18.** It is not clear that CHA attempts to legitimatize its action by contending that it was motivated by the rejection of the Lease. Aside from its view that the Lease was terminated by reason of its actions in the District Court, it justifies its action as only seeking to "complete the termination of its contractual relationship with Debtor." Yet the reason for such intention is her failure to pay prepetition dischargeable rent arrears.

tual rights so long as it does not seek to collect the dischargeable debt. It need not fashion a pretextual reason for its eviction.

My decision is intended to ensure the protection contemplated by *Perez* while allowing CHA to implement its rights as a creditor. I recognize the result of this rule may be the temporary loss of a public housing unit for the Debtor as she awaits the assignment of a new unit. The hardship of this consequence will be a function of the demand for housing and the availability of units.[19] However, as the Court noted in *Watts*, "the fresh start policy does not require the State to insulate a debtor from any and all adverse consequences of a bankruptcy filing." 876 F.2d at 1094.

---

**19.** CHA, in its brief, argues that *Sudler* and its progeny have created a "public housing tenant exception" that causes tenants to refuse to pay rent until the eve of eviction, protracted by the due process requirements of public housing law, and then to file bankruptcy with no adverse consequences to their tenancies. The resulting loss of rental income, it states, prejudices the CHA receivership and all tenants whose services are impaired by CHA's lack of funds. Whether that tenant practice is widespread and whether its consequences are as CHA has argued is not part of this Court's consideration as they implicate matters of policy that are provinces of a legislative, not judicial determination. Moreover, my ruling is not intended to implement CHA's desire to replace the debtors with unpaid dischargeable debt with other tenants perceived to be better credit risks. In holding that § 525(a) protects a debtor's right to public housing, presumably were there no waiting list for a unit, there would be no reason to evict the debtor. However, to the extent that there are equally eligible financially disadvantaged persons waiting for housing, debtor's fresh start is not intended to be a head start and she will have to take her place in line to gain access to a unit.