**In re Carol HOBBS, Debtor.**

**Bankruptcy No. 97–05065–6J7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 8, 1997.

The Housing Authority, City of Orlando, c/o Ricardo L. Gilmore, Tampa, FL, for Movant.

Jerald I. Rosen, Longwood, FL, Chapter 7 Trustee.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CREDITOR'S MOTION TO LIFT THE AUTOMATIC STAY*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on November 3, 1997, on the Motion for Relief from the Automatic Stay (Doc. No. 16) ("Motion") filed by the Housing Authority of the City of Orlando ("Creditor") and Opposition to the Motion (Doc. No. 20) filed by the debtor, Carol Hobbs ("Debtor"). Both parties also submitted memorandums of law in support of their positions (Doc. Nos. 25 & 26). Creditor argues that the automatic stay should be lifted so they may evict the Debtor from the public housing maintained by the City. Debtor argues that the automatic stay should not be lifted because the eviction action against her is prohibited pursuant to Section 525(a) of the Bankruptcy Code[1]. After reviewing the pleadings and considering the arguments of counsel and applicable law, the Motion is granted.

*Background.* The facts are undisputed. The Debtor is a 24 year old mother of two children. The Creditor is a public housing authority which provides subsidized housing for low income persons. On February 15, 1994, the Debtor and the Creditor executed a one month lease which would automatically renew for successive one month periods until terminated by either party.

The Debtor failed to pay rent for the month of March 1997. The Creditor initially gave the Debtor a chance to pay the past due rent; however, when the Debtor failed to

Robert K. Dwyer, Orlando, FL, for Debtor.

1. The Debtor also argues that the notice of termination provided to the Debtor was defective for two reasons. First, the Debtor did not owe any past due rent because her rent should have been adjusted downwards under 24 C.F.R. 966.4( c ) and Section 4 of the lease. Second, the notice of eviction failed to inform her of her right to inspect documents relevant to the eviction under 24 C.F.R. 966.4(*l* )(3)(ii). The Court will not consider the merits of either of these arguments. These issues should have been raised as defenses before the state court which issued the Judgment of Possession and the Writ of Possession. The Debtor had the opportunity to assert the defenses and is now collaterally estopped from relitigating the merits of the alleged deficiencies in the Creditor's notices.

make these agreed late payments, the Creditor filed an eviction action in state court. On June 12, 1997, a Final Judgment of Possession was entered against the Debtor in the eviction action. A Writ of Possession was issued on June 20, 1997, but was not served until June 23, 1997. In the meantime, on June 20, 1997(the "Petition Date"), the Debtor filed a Chapter 13 case which was later converted to this Chapter 7 case. Neither the Chapter 7 Trustee nor the Debtor assumed the residential lease under Section 365 of the Bankruptcy Code.

■ *Termination of a Residential Lease.* Termination of a residential lease is a state law concept that is governed by the common law or statutes of the state in which the property is located. *In re Bacon,* 212 B.R. 66, 69 (Bankr.E.D.Penn.1997) *citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Here, the leased property is located in Florida. Thus, Florida law controls. Under Florida state law, the eviction process is not complete until the tenant is dispossessed from the property. *In re Wimberly,* Case No. 95–14612–BKC–RAM (Bankr.S.D.Fla.1996); *In the Matter of Ross v. Metropolitan Dade County (In re Ross),* 142 B.R. 1013, 1016–1017 (S.D.Fla.1992) *aff'd* 987 F.2d 774 (11th Cir.1993). Until the writ of possession is executed and the tenant is removed from the premises, a tenant whether involved in a bankruptcy case or not has a right to retain possession of her leased housing. *Id.*

■ In this case, Debtor argues that she had an interest in the lease when she filed for bankruptcy because the lease was not terminated pursuant to Florida law. The Debtor is correct. The lease was not terminated because the writ of possession was not served before the bankruptcy petition was filed. Accordingly, the Debtor had a continuing interest in the lease and a possessory interest in the rented premises on the Petition Date.

■ *Rejection of Residential Lease in Bankruptcy.* Section 365(d)(1) provides that if the Chapter 7 Trustee does not assume or reject an unexpired residential lease within 60 days, the residential lease is deemed rejected. 11 U.S.C. Section 365(d)(1) (1994). The majority of courts agree that an automatic rejection of a lease pursuant to Section 365(d)(1) results in an abandonment of the lease to the debtor. *In re Bacon,* 212 B.R. at 68; *Adams v. Philadelphia Housing Authority (In re Adams),* 94 B.R. 838, 850 (Bankr. E.D.Penn.1989). As such, the lease is no longer part of the bankruptcy estate. *In re Rodall,* 165 B.R. 506, 508 (Bankr.M.D.Fla. 1994); *Rich Mar Apartments v. Knight (In re Knight),* 8 B.R. 925, 929 (Bankr.D.Md. 1981); *Reed v. Philadelphia Housing Authority (In re Reed),* 94 B.R. 48, 52 (E.D.Penn.1988). Thus, a bankruptcy court no longer has jurisdiction over that property, and the debtor is left with the rights and remedies provided under nonbankruptcy law. *In re Rodall,* 165 B.R. at 508. Accordingly, a debtor who reacquires rights under an abandoned lease is in the same position that she would have been in absent the filing of bankruptcy. *Id.; Housing Authority of the City of Pittsburgh v. Collins (In re Collins),* 199 B.R. 561, 565 (Bankr.W.D.Penn.1996).

■ *Application of Section 525(a) when Public Housing Authority Seeks to Evict Tenant for Failure to Pay Rent.* Section 525(a) of the Bankruptcy Code prohibits a governmental unit from denying, revoking, suspending or refusing to renew a grant solely because a debtor has not paid a debt that is dischargeable or has been discharged under the Bankruptcy Code. 11 U.S.C. Section 525(a). Section 525(a) codified *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), where the Supreme Court held that a state would frustrate the fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 81, 1978 U.S.Code Cong. & Admin.News pp. 5787, 5867. Section 525(a) prohibits actions by governmental or quasi-governmental organizations from discriminating against debtors in ways which affect the debtor's fresh start. *Id.*

Many courts have wrestled with the issue of whether Section 525(a) of the Bankruptcy Code protects public housing tenants from

eviction. *In re Bacon,* 212 B.R. 66 (Bankr. E.D.Penn.1997); *Housing Authority of the City of Decatur v. Caldwell (In re Caldwell),* 174 B.R. 650 (Bankr.N.D.Ga.1994); *Housing Authority of the City of Pittsburgh v. Collins (In re Collins),* 199 B.R. 561 (Bankr. W.D.Penn.1996); *Housing Authority of the City of Pittsburgh v. James (In re James),* 198 B.R. 885 (Bankr.W.D.Penn.1996); *In re Couture,* 202 B.R. 837 (Bankr.D.Vt.1996); *Gibbs v. Housing Authority of New Haven (In re Gibbs),* 12 B.R. 737 (Bankr.D.Conn. 1981), *aff'd in part, remanded in part, Gibbs v. Housing Authority of the City of New Haven (In re Gibbs),* 76 B.R. 257 (D.Conn. 1983); *Curry v. Metropolitan Dade County (In re Curry),* 148 B.R. 966 (S.D.Fla.1992); *Sudler v. Chester Housing Authority (In re Sudler),* 71 B.R. 780 (Bankr.E.D.Penn.1987); *In re Day,* 208 B.R. 358 (Bankr.E.D.Penn. 1997).

One particularly persuasive and thorough discussion of this issue is by Judge Sigmund in the decision of *In re Bacon,* 212 B.R. 66 (Bankr.E.D.Penn.1997). In *Bacon,* the public housing authority and the debtor agreed to a monthly rental amount for government subsidized housing.[2] *Id.* at 68. The debtor owed $9,967.76 in rent when she filed a Chapter 7 bankruptcy petition. *Id.* The lease was not assumed and was deemed rejected after 60 days pursuant to Section 365(d)(1). *Id.* Further, the public housing authority and its receiver, similar to the Creditor in this case, moved for relief from the automatic stay to enforce its rights under the lease against the debtor. *Id.* at 67–68.

Because the lease in *Bacon* was deemed rejected under Section 365(d)(1), the sole issue before the court was whether Section 525(a) prohibits a public housing authority from evicting a debtor whose sole default is the failure to pay prepetition dischargeable debt. *Id.* at 69. The debtor argued that any eviction action by the public housing authority was prohibited discrimination under Section 525(a) because the governmental organization was revoking a grant—the right to live in subsidized housing. *Id.* at 68. However,

Judge Sigmund held that Section 525(a) does not provide any special protection to a public housing tenant or prevent a public housing authority from getting relief from the automatic stay to pursue an eviction action where the tenant's sole default is the failure to pay prepetition rent which is otherwise dischargeable. *Id.* at 75–76. Rather, Section 525(a) simply protects the right of the debtor to participate in the public housing program free from any discriminatory action taken by the public housing authority as a result of the bankruptcy filing. *Id.* at ftnote 17. This protected right is separate and distinct from the right of the public housing authority to enforce its lease terms and to require that all tenants timely make rental payments. *Id.*

Thus, the protections offered by Section 525(a) are not implicated as long as the eviction process does not deprive the debtor of the right to participate in the public housing program in the future. *Id.* If the public housing authority sought to preclude the debtor from participating in the public housing program because the debtor had filed a bankruptcy petition, then Section 525(a) would be implicated. *Id.; Housing Authority of City of Decatur v. Caldwell (In re Caldwell),* 174 B.R. at 655. However, if the public housing authority is merely enforcing its lease as it would against any other tenant, Section 525(a) does not require the public housing authority to forestall eviction proceedings merely because a bankruptcy action is filed by the tenant, assuming the authority obtains permission to modify the automatic stay. *In re Bacon,* 212 B.R. at 75–76.

In permitting the public housing authority to modify the automatic stay to continue an eviction action, the debtor will be removed from the leased premises while she awaits assignment of a new unit. *Id.* at 76. The amount of time the debtor goes without public housing will depend on the demand for such public housing and the availability of these units. *Id.* In some locales, the wait may be long, and the result of this ruling harsh. *Id.* However, if Section 525(a) prevented a public housing authority from evict-

---

**2.** Similar to our facts, the debtor's monthly rent was determined as a percentage of her income. *In re Bacon,* 212 B.R. at 68. The remaining fair market value of the rent is paid by a HUD subsidy. *Id.*

ing a debtor whom failed to pay prepetition rent then the "fresh start" which Section 525(a) was designed to provide debtors would be turned into an impermissible "head start." *Id.* at ftnote 19; *See, Housing Authority of the City of Decatur v. Caldwell (In re Caldwell),* 174 B.R. at 654 (Tenants do not lose their apartments because they filed bankruptcy, which is what Section 525(a) was drafted to prevent, but rather, they lost their apartments because federal regulations and the leases demand that rent be paid to maintain possession of the premises). In concluding that Section 525(a) does not preclude a public housing authority from seeking relief from the automatic stay to continue an eviction action, the Court declines to following the line of cases illustrated by *Curry v. Metropolitan Dade County (In re Curry),* 148 B.R. 966 and *Sudler v. Chester Housing Authority (In re Sudler),* 71 B.R. 780 [3].

*Analysis.* In this case, neither the Debtor nor the Chapter 7 Trustee assumed the residential lease within 60 days of the Petition Date. Thus, the Debtor's lease was deemed rejected on August 19, 1997, pursuant to Section 365(d)(1). The automatic rejection of the lease resulted in an abandonment of the lease back to the Debtor. As such, the lease is no longer part of the bankruptcy estate, and the bankruptcy court no longer has jurisdiction over the lease. The Debtor is only left with the rights and remedies provided for under nonbankruptcy law. Thus, the only issue is whether Section 525(a) of the Bankruptcy Code prevents the Creditor from lifting the automatic stay and executing the Writ of Possession because the Debtor did not pay dischargeable prepetition rent.

Following the rationale of *In re Bacon,* Section 525(a) does not prevent the Creditor from lifting the automatic stay to evict the Debtor. The Creditor is seeking to evict the

Debtor because the Debtor failed to pay her rent as required by the lease and federal regulations.[4] Accordingly, the Creditor is not seeking to evict the Debtor because she filed for bankruptcy. In fact, the Creditor obtained a Judgment of Possession before the Debtor even filed for bankruptcy.

If Section 525(a) is read as broadly as Debtor argues, a public housing authority could never evict a tenant. Every time a tenant defaulted under a lease, a tenant could simply file for bankruptcy and discharge the prepetition debt. The tenant then could invoke the protection of Section 525(a) to maintain possession of the premises without curing the prepetition defaults under Section 365(b)(1)(A). This Court rejects this interpretation of Section 525(a) while recognizing that the effect on this particular Debtor is harsh. The Debtor has limited financial means and will be dispossessed of her subsidized housing. However, Section 525(a) was not intended to shield debtors from their responsibilities under a residential lease. The Debtor can reapply for subsidized housing. The waiting period before the Debtor can reacquire subsidized housing will depend on the number of available units and the number of people demanding such accommodations. If the Creditor refuses to grant the Debtor subsidized housing because the Debtor filed this bankruptcy case and discharged prepetition rent, then and only then would Section 525(a) prohibit the Creditor's actions. However, Section 525(a) does not prevent the Creditor from proceeding with the requested eviction.

In the alternative, the Debtor argues that if the Court finds that the rejection of the lease leaves the Debtor without an interest in the premises then the Debtor wants to return to a Chapter 13 case. The lease was

---

**3.** These Courts held that Section 525(a) prevents a public housing authority from evicting a debtor-tenant on the basis of a prior rent obligation which was discharged in bankruptcy reasoning that Section 525(a) overrides the requirements of a debtor under Section 365. 148 B.R. at 972; 71 B.R. at 786–787. Section 365(b)(1)(A) provides that a trustee, or by extension, a debtor, may not assume a lease until she cures any prepetition defaults. *Id.* If Congress had intended public housing tenants to remain in possession of their apartments without requiring them to pay rent,

the statutory language should provide for such a result. *See, In re Bacon,* 212 B.R. at 74, ftnote 16; *In re Caldwell,* 174 B.R. at 654; *Housing Authority of the City of Pittsburgh v. Collins (In re Collins),* 199 B.R. at 567–568. Section 525(a) does not supersede or override the requirements of Section 365 of the Bankruptcy Code. *Id.*

**4.** *See,* 24 C.F.R. 966.4(*l*)(2)( i ); Section 10(b) of the lease.

abandoned by the Chapter 7 Trustee and is deemed rejected under Section 365(d)(1). The lease is no longer part of the bankruptcy estate. Even if the Debtor converted the case to a Chapter 13 proceeding, the Debtor cannot assume and cure the lease. As such, the possibility of returning to a Chapter 13 case provides no defense to the Motion.

*Conclusion.* Section 525(a) does not prevent the Creditor from evicting the Debtor for failing to pay prepetition dischargeable rent. The Creditor is entitled to modify the automatic stay under Section 362(d)(1). The Motion is granted effective January 1, 1998. A separate order consistent with these findings of fact and conclusions of law shall be entered.