# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6093 EM

---

In re:  WYSEDA SMITH       *
                                             *
                                             *

           Debtor.           *
                                             *

WYSEDA SMITH          *      Appeal from the United
                                             *      States Bankruptcy Court for the
           Appellant,        *      Eastern District of Missouri
                                             *
       v.                          *
                                             *

ST. LOUIS HOUSING AUTHORITY     *
                                             *
           Appellee.         *

---

Submitted: February 6, 2001
Filed: March 23, 2001

---

Before KOGER, Chief Judge,  WILLIAM A. HILL, and SCOTT, Bankruptcy Judges.

---

SCOTT, Bankruptcy Judge

## I.  Factual Background

Wyseda Smith resides in public housing.  That is, her rent is subsidized by the Public Housing Authority as administrator of housing assistance funds.  The Housing Authority pays directly to Ms. Smith's landlord a specific amount each month for Ms. Smith to rent an apartment.  If her benefits terminate, the

Housing Authority would no longer pay this subsidy, and the landlord, not receiving the rent obligation, would have the right to seek her eviction from the premises.[1]

Under the applicable regulations, the debtor, like all recipients of the public housing benefits, is required to pay one third of her income as rent. When she obtained the housing benefits, Ms. Smith signed statements that she had no income and promised to advise of any change in that status. The documents she signed specifically advised her that if she failed to report income, her housing benefits could be terminated. Since Smith reportedly had no income, she was required to pay no amount for rent.[2]

At some time in 1999, the Housing Authority discovered that Ms. Smith had income for 1996,[3] but had failed to report that income. Accordingly, on October 6, 1999, the Housing Authority sent a letter to Ms. Smith advising her that it had discovered the unreported income and requested payment of the thirty percent rent payment. The letter advised that if she failed to pay the amount due, her benefits would be

---

[1] Smith's landlord is also the Housing Authority, and, as a landlord, acts in a separate capacity from the administrator who determines and pays her benefits under the program. As landlord, however, the Housing Authority may have additional rights against those who have defaulted on rent payments, i.e., to seek eviction. See generally In re Bacon, 212 B.R. 66, 75 (Bankr. E.D. Pa. 1997).

[2] The statements signed by Ms. Smith each year twice promise to report any change in income:

> If, at any time during the year, I or any member of my family have a change of income, I will report it immediately to the Section 8 office in writing.***

Statement of Section 8 Participation Responsibilities ¶ 2 (emphasis in original); and

> OUTLINE OF ONGOING RESPONSIBILITIES AS A PARTICIPANT ON SECTION – 8
>
> a.      Report all changes in family size and income.***

Id.. The obligations and grounds for termination established by the federal regulations were given to Ms. Smith in a three page document which she signed. See St. Louis Housing Authority Housing Assistance Programs statement; see also 24 C.F.R. §§ 982.551, 982.552.

[3] It was later discovered that Ms. Smith also had unreported income for the 1997 taxable year.

terminated on November 30, 1999. Ms. Smith requested and was granted a hearing on the action. The hearing officer upheld the termination because Ms. Smith admitted that she failed to report the income. The letter extended the time by which she was required to make payment to December 22, 1999, and again advised that her benefits would be terminated effective December 31, 1999, if payment was not timely made.

Despite these strictures, Ms. Smith was given a further opportunity to pay her rent, to the extent permitted under the federal regulations. Ms. Smith paid nothing on the obligation, and on March 15, 2000, the Housing Authority sent a letter to Ms. Smith's attorney indicating that due to her failure to report income for two years, Ms. Smith's participation in the subsidy program would be terminated, effective April 30, 2000. The letter also advised that if she made full payment on the obligation, her benefits would not be terminated. Two days before the termination date, on April 28, 2000, Ms. Smith filed a chapter 7 petition. On May 2, 2000, after receiving notice of the chapter 7 case, the Housing Authority sent another letter to Ms. Smith's attorney asserting that the benefits had been terminated due to the debtor's failure to report income.

The Housing Authority thereafter filed a motion for relief from stay pursuant to section 362, which was granted after hearing. The order memorializing the ruling was specific and narrow, provided that the Housing Authority could terminate the debtor from the housing program and discontinue making any payments to the landlord for the rent due, and did not address Ms. Smith's rights to apply for future benefits. Ms. Smith timely appealed that order, asserting, as she did below, that the termination of her present benefits constituted a violation of section 525 because that section precluded the Housing Authority from terminating her benefits on the grounds of nonpayment. Because we believe that the bankruptcy court[4] correctly applied section 525 to this situation, we affirm.

## I I.  The Standard of Review

The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law de novo. Fed. R. Bankr. P. 8013. Thus, we review the specific findings of fact utilized to determine whether section 525 prohibits action by the Housing Authority under the clearly erroneous standard.  See Gibbs v. Housing Authority of New Haven, 86 B.R. 257, 263 (D. Conn. 1983).

---

[4]The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

Specifically, the bankruptcy court's implicit determination that the termination was not "solely" due to Smith's failure to pay the obligation to the Housing Authority is reviewed under the clearly erroneous standard.[5] See Atlantic Gulf Communities Corp. v. Tax Collectors of St. Lucie County (In re General Development Corp.), 163 B.R. 216 (S.D. Fla. 1994). However, in determining whether the bankruptcy court properly interpreted the case authority and correctly applied the facts under section 525, our review is de novo.

### I I I.  Application of Section 525(a)

The Bankruptcy Code provides in pertinent part:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a). This provision protects debtors from acts of discrimination by governmental units when the discrimination is due *solely* to the fact that the debtor filed a bankruptcy petition, was insolvent, or failed to pay a discharged obligation. It is not reasonably subject to dispute that this statute applies to the Housing Authority in this case. See In re Bacon, 212 B.R. 66, 75 (Bankr. E.D. Pa. 1997)("[Indeed none of the cases denying section 525(a) protection to a public housing tenant has held or suggested that it cannot be invoked upon a Housing Authority's refusal to grant public housing benefits to a debtor with unpaid, but discharged, debt to the landlord.").

---

[5]The bankruptcy court did not make an express ruling that the termination was not solely due to nonpayment. However, since that issue was argued to the court and the issue was necessary to the determination that section 525(a) was inapplicable and that relief from stay was warranted, the bankruptcy court necessarily and implicitly determined that the termination was not due solely to nonpayment of the debt.

The ultimate issue in this case is whether the Housing Authority may terminate the debtor's benefits, i.e., the subsidy to provide her rent, because she failed to pay thirty percent of her income toward her rent as required by the regulations governing the program. We conclude that section 525(a) does not prohibit this action.[6]

We must first resolve the issue of whether the Housing Authority sought to terminate Ms. Smith's benefits "solely" because she was a debtor under title 11 or insolvent before the commencement of the case. The Housing Authority asserts that her benefits are subject to termination because of her fraud – her failure to report income as required by the regulations and the documents she signed. The Housing Authority set forth its reason for her termination from the program in various correspondence:

> Please make payment to the St. Louis Housing Authority for UNREPORTED INCOME. ***
>
> The balance must be paid in full within (30) days of the above date. The following action will be taken for failure to repay the St. Louis Housing Authority: ***
>
> B) Termination from the Section 8 Program effective 11/30/99.

Housing Authority letter to Ms. Smith, dated October 6, 1999 (emphasis in original).

> Per our meeting on November 10, 1999, regarding the termination of your Section 8 Assistance for unreported income, please be advised that the full balance of $3,628.00 must be paid no later than December 22, 1999.
>
> In our meeting, you admitted that you did not report the income because the jobs were short term and you didn't think it would matter. Therefore, if the full balance is not paid by December 22, 1999, your Section 8 Assistance will be terminated at the end of your contract, effective December 31, 1999.

Housing Authority letter to Ms. Smith, dated November 11, 1999 (emphasis added).

---

[6]During the pendency of the chapter 7 case, the Housing Authority filed a complaint objecting to the dischargeability of the rent obligation under section 523(a)(2). In that proceeding, the Housing Authority asserted that the obligation was nondischargeable due to the debtor's fraudulent conduct in failing to report income. The debtor consented to a judgment of nondischargeability with regard to the 1996 taxable year.

> Ms. Smith <u>failed to report income for two consecutive years</u>. We will not enter a repayment agreement with Ms. Smith based upon our repayment policy. Ms. Smith's participation in the Section 8 program will end effective April 30, 2000, if full payment is not received.

Housing Authority letter to Ms. Smith's attorney, dated March 15, 2000 (emphasis added). These letters indicate that the reason for her termination from the program was her failure to report income. Indeed, the requirement that she report income was an express condition to being in the program in the first instance. The fact that the Housing Authority offered redemption does not obviate the fact that the <u>basis for her termination</u> was the failure to report income. The Housing Authority's delay in terminating her benefits, based upon Ms. Smith's unfulfilled promises, does not necessarily diminish or destroy the existing rationale for the termination of her benefits. The letters indicate that the underlying reason for her termination was her fraud and, thus, there is no error in a determination that the failure to pay the debt was not the sole basis for termination of her benefits.

Even if the Housing Authority's decision to terminate her benefits arose solely from Smith's failure to pay a debt, section 525 does not prohibit termination of those benefits. Section 525 provides that a governmental unit may not suspend or refuse to renew a grant to a person that is or has been a debtor under this title solely because the individual filed a bankruptcy petition or was insolvent before the commencement of the case. In this instance, the debtor, prepetition, breached her contract with the Housing Authority, thereby giving the Housing Authority, pursuant to the express terms of that contract and the federal regulations, cause to terminate the relationship. Section 525 does not operate to cure Smith's contractual defaults and does not require the Housing Authority to continue its contractual relationship with her.[7] While the Housing Authority may be required to consider future applications for benefits, it is not required to reinstate or permit cure of a default of a contractual relationship.[8] Thus, the termination of the lease is not a violation of section 525. <u>See</u> <u>In re Bacon</u>, 212 B.R. 66 (Bankr. E.D. Pa. 1997). In this instance, the Housing Authority is not refusing to deal with the debtor because of her bankruptcy filing, but,

---

[7]The Housing Authority concedes, however, that the debtor may reapply for public housing and may not be denied future benefits because of her bankruptcy filing or insolvency. <u>See</u> <u>In re Lutz</u>, 82 B.R. 699 (Bankr. M.D. Pa. 1988).

[8]Had Congress intended section 525 to have that reach, it could have included provisions similar to those in section 1325(b) providing for cure and reinstatement of contractual relationships with mortgagees.

rather, seeks to enforce its contractual rights which permit termination of benefits based upon fraudulent conduct. Section 525(a) protects Smith's right to participate in a public housing program free from discriminatory action based upon her bankruptcy filing; it does not bar the Housing Authority from enforcing the terms of the regulations and contracts under which it operates in an effort to deter fraud. Cf. In re Hobbs, 221 B.R. 892 (Bankr. M.D. Fla. 1997). Section 525(a) is not intended to shield a debtor from responsibilities under leases or other government obligations. The policy of ensuring a "fresh start" does not require a governmental entity to insulate the debtor from all adverse consequences of filing a bankruptcy petition or, indeed, her own fraud.

## I V. <u>Conclusion</u>

In permitting the Housing Authority to terminate her future benefits for her failure to report income and pay an obligation, the bankruptcy court did not err in concluding that section 525(a) did not apply to the debtor's situation. The debtor does not argue with the conclusion that, if section 525(a) is inapplicable, relief from stay is appropriate. Accordingly, we affirm the order granting the Housing Authority's motion for relief from stay.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT