In re David L. MORGAN, Debtor.

Bankruptcy No. 94–04276–BGC–13.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 14, 1994.

---

Joe Erdberg, Birmingham, AL, for debtor.

G. Hampton Smith, III, Birmingham, AL, for movant.

David Rogers, Trustee.

## ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY PROPERTY MANAGERS, INC.

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on a Motion for Relief from Automatic Stay filed by Property Managers, Inc. After notice, a hearing was held on August 15, 1994 at which Mr. David L. Morgan, the Debtor, Mr. Joe S. Erdberg, the attorney for the Debtor, and Mr. G. Hampton Smith, III, the attorney for the Movant appeared.

The Movant is a lessor of an apartment complex. The Debtor is the lessee of a unit in the apartment complex. The Movant has requested relief from the stay to file an unlawful detainer action against the Debtor. The Debtor proposes to pay the back rent owed to the Movant and assume the lease pursuant to 11 U.S.C. § 365 via 11 U.S.C. § 1322(b)(7). Section 1322(b)(7) provides that a Chapter 13 plan may, subject to the requirements of section 365, provide for the assumption of an *unexpired* lease of the debtor. Section 365(b)(1) provides that, if there has been a default in an unexpired lease of the debtor, the lease may not be assumed unless the lessor is given adequate assurance that the default will be promptly cured and adequate assurance of future performance under the lease. A debtor's Chapter 13 plan is the vehicle through which the default in a lease may be cured.

■ Under Alabama law, a lessor may terminate a lease for breach or default by giving written notice to the lessee to quit the premises. Ala.Code 1975, § 35–9–6. If no time period is otherwise specified in the lease, the termination of the lease becomes effective 10 days following the delivery of the notice to quit. *Id.* Upon termination of the tenancy, the lessee has no statutory right except as provided for in the lease instrument, to cure the default or otherwise reinstate the lease. To recover possession of the leasehold from a tenant who refuses to leave following termination of the lease, the lessor must file a suit in state district court for unlawful detainer. Ala.Code 1975, § 6–6–310(2). An unlawful detainer action may not be filed by the lessor, however, until 10 days following service upon the lessee of a written notice to vacate the premises. *Id.* A complaint for unlawful detainer must be served on the lessee at least 6 days prior to a trial being had on the complaint. Ala.Code 1975, § 6–6–332(b). If the district court finds in favor of the lessor on the complaint, the judge must issue a writ of execution com-

manding the sheriff to restore possession of the leasehold to the lessor. Ala.Code 1975, § 6–6–337(a). The lessee may appeal the judgement of the district court to the state circuit court within 14 days. Ala.Code 1975, § 6–6–350. Appeal of the unlawful detainer judgement results in a trial de novo in the circuit court. *Id.* The lessee may obtain a stay of the district court's writ of restitution pending the decision of the circuit court by posting a bond for costs, or in lieu thereof, filing an affidavit of substantial hardship pursuant to Ala.R.Civ.P. 62(dc). *Brentwood Park Apts. v. Forbus,* 510 So.2d 242 (Ala. 1987).

The term of the lease in this case began on May 3, 1994, and ends on April 30, 1995. The lease contract provides that, in the event the Debtor violates any of the conditions of the lease, the Movant may "upon giving 24 hours written notice to the Lessee annul and terminate this lease." The Debtor has not paid the rent due under the lease for the months of June, July, August and September, 1994, although the Debtor offered to tender the August rent at the hearing regarding this matter. For nonpayment of the June rent, the Movant, on June 30, 1994, notified the Debtor in writing that his lease would be terminated upon the expiration of the ensuing 24 hours. On July 5, 1994, the Movant demanded in writing that the Debtor surrender possession of the leasehold premises within 10 days. The Debtor filed his Chapter 13 petition on July 22, 1994.

## I. THE PLAIN MEANING OF THE STATUTE EMPOWERS THE DEBTOR TO ASSUME THE LEASE

The Movant contends that the lease may not be assumed because it was terminated under state law and the terms of the lease prior to bankruptcy. If the lease involved was a lease of nonresidential real property, the Movant's argument would be well received. Section 365(c)(3) specifically prohibits the assumption of an unexpired lease of nonresidential real property that has been

*terminated* under applicable nonbankruptcy law prior to bankruptcy. Conspicuous by its absence is a corresponding prohibition against the assumption of an unexpired lease of residential real property which has been terminated under applicable nonbankruptcy law prior to bankruptcy. The only qualification on the right of a Chapter 13 debtor to assume a residential real property lease, other than prompt cure and adequate assurance of future performance, therefore, is that the lease be "unexpired." If a lease has not expired, it may be assumed upon satisfaction of the conditions contained in section 365(b)(1).

The Movant argues that a lease *expires* once it has been *terminated* under state law. If the Movant is correct and the words "expired" and "terminated" are precisely synonymous, then section 365(c)(3) would be unnecessary since by definition a lease "terminated under applicable nonbankruptcy law" could not be an "unexpired lease."[1] For the same reason, the word "expiration" in section 541(b)(2) ("a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease,") and section 362(b)(10) ("a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease,") would be superfluous. The fact is that, while both terms denote an ending or cessation, they otherwise have distinct meanings. To "expire" means "to come to an end," while the word "terminate" means "to bring to an end." *Webster's II New Riverside University Dictionary,* Pages 454, 1194 (1988). The word expire, including all of its derivatives, is an intransitive verb. As such, it expresses an action or state which is limited to a subject, and does not otherwise require a direct object to complete its meaning. For example, "The lease has not expired," or "The unexpired lease may be assumed." In contrast, the word "terminate" is a transitive verb, which expresses an action between a subject and an object and requires a direct

---

1. Section 365(c)(3) reads:
 The trustee may not assume or assign any executory contract or *unexpired* lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if such lease is of nonresidential real property and has been *terminated under applicable nonbankruptcy law* prior to the order for relief.
 11 U.S.C. § 365(c)(3) (emphasis added).

object to complete its meaning. For example, "The notice delivered by the lessor terminated the lease."

█ When used in reference to a contract or lease, the word "expiration" means "termination by mere lapse of time, as the expiration date of a lease, insurance policy, statute, and the like." *Black's Law Dictionary* 579 (6th ed. 1990). The word "termination," on the other hand, in the same context, means, "an ending, usually before the end of the lease or contract, which termination may be by mutual agreement or may be by exercise of one party of one of his remedies due to the default of the other party." *Black's Law Dictionary* 1471 (6th ed. 1990). The Alabama Supreme Court noted the difference in the meanings of the terms in the context of leases in *Vizard Inv. Co. v. Mobile Fish & Oyster Co.*, 197 Ala. 625, 73 So. 328 (1916). Involved in *Vizard* was a statute which provided that any tenant who forcibly or unlawfully retained possession of a tenancy "after the expiration of his term" or refused to surrender possession on the written demand of the lessor would be liable for double the amount of rent agreed to be paid under the contract. Suit for double rent was brought by the lessor after the lease was terminated for nonpayment of rent but prior to the end of the term of the lease. The trial court dismissed the count in the lessor's complaint for double rent damages. The Alabama Supreme Court affirmed, stating:

> [B]y expiration of the term the statute intended the term nominated in the contract of lease and its termination by effluction of time and its own limitation, and not otherwise. It has been so held in respect to similar statutes in other jurisdictions and that, we think is the proper construction of the statute. here.
>
> The third count of the complaint as amended shows that the term of the original contract of lease between defendant and plaintiff's assignor had not expired when this suit was brought, but that the lease had been terminated by plaintiff's declaration of a forfeiture in accordance with a provision of the contract. It follows from this that the court correctly sustained

defendant's demurrer to the third count on the ground indicated.

73 So. at 329 (citations omitted).

█ The Supreme Court and Court of Appeals for the Eleventh Circuit have repeatedly admonished that statutory interpretation should begin with the plain meaning of the statute's text, and end there, if the meaning of the statute is truly plain. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); *In re Hoggle*, 12 F.3d 1008, 1010 (11th Cir.1994). The words used in a statute are to be accorded their ordinary and common meanings, unless otherwise specifically indicated or unless ambiguity will thereby result. *In re Burns*, 887 F.2d 1541, 1552 (11th Cir.1989). In common parlance, and when used as terms of art as well, the word "expired" denotes the natural or inevitable end to a contract or lease by lapse of time, while the word "terminated" denotes the unnatural or premature end to a contract or lease as the result of breach or forfeiture. To hold that the two words are interchangeable would be to embellish the plain meanings of both words, in direct violation of the mandate of the Supreme Court and circuit court, and to frustrate the purpose behind section 1322(b)(7), as will be discussed in more detail below. For those reasons, this Court holds that a lease which has been terminated under nonbankruptcy law may, despite that fact, be an "unexpired lease" under section 365, and, ipso facto, an "unexpired lease" of residential real property which may be assumed by a Chapter 13 debtor even though the lease may have been terminated under nonbankruptcy law prior to bankruptcy.

█ The Movant argues further that nothing exists for the Debtor to assume since, under state law, the lease was extinguished upon termination. Termination of the lease does not effect some mystical disappearance of the lease which cannot be undone. In order to effect an orderly dispossession of the tenant and to provide a forum for trial of the right of the lessor to dispossess the tenant, the Alabama statutes require the lessor to file an unlawful detainer complaint against the tenant and allow the tenant to hold possession of the leasehold until comple-

tion of the trial of the unlawful detainer action. With the 10 day presuit demand, plus the 6 day service period before trial, plus the 14 day appeal period from the district court order, plus the time required for a trial de novo in circuit court, the period from lease termination to dispossession by the sheriff may last several weeks. If, during that time, a judgement were to be rendered in the tenant's favor, the lease would be reinstated, or the lease termination voided, and the tenant allowed to remain in the property. The lease termination is in effect inchoate until the writ of restitution is finally entered and no appeal is taken or stay of the writ's execution is obtained. Hence, reinstatement of the lease is contemplated under state law. Furthermore, a limited right of reinstatement of the lease is contemplated and provided for, with the Movant's acquiescence, in the lease document itself, at paragraph 12, which provides as follows: "If the lease is terminated by the Lessor for nonpayment of rent, and the Lessee pays the rent and other charges and thus makes himself current, and remains or continues to be in possession of the leased premises or any part thereof, with the Lessor's consent, this lease will be considered reinstated, and will have effect as though it had not been terminated." There is the appearance that neither the law nor the landlord considers a terminated lease a nonentity.

 The debtor's right to assume a lease of residential property is not unlimited. Reason dictates that at some point in time the right to cure must end, so as to encourage both the lessor and debtor to promptly seek legal redress and relief to which they are entitled, to provide a degree of finality and certainty to the financial affairs of the lessor and debtor, and to avoid uncertainty regarding rights to possession of the leasehold. Clearly the right to cure does not extend beyond the term of the lease. Also, the right to assume the lease presupposes some possessory nexus or toehold in the property. Once that possessory toehold is lost, no "interest" exists to form the basis of an assumption under section 365. For example, once a writ of restitution has been issued by the state court, and no stay of the writ is obtained pending appeal, all hope of reinstat-

ing the lease under state law will have vanished, along with any basis for remaining in the property. Until the writ is executed, however, an unexpired lease of residential real property may be assumed. *Ross v. Metropolitan Dade County*, 142 B.R. 1013 (S.D.Fla.1992), *aff'd without opinion*, 987 F.2d 774 (11th Cir.1993); *Buckner v. Colonial House Apartments*, 64 B.R. 90 (W.D.Tenn.1986); *In re Talley*, 69 B.R. 219 (Bankr.M.D.Tenn.1986); *In re Shannon*, 54 B.R. 219 (Bankr.M.D.Tenn.1985).

## II. THE POLICY BEHIND CHAPTER 13 SUPPORTS THE DEBTOR'S RIGHT TO ASSUME THE LEASE

*In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir.1975), a case decided under the Bankruptcy Act, involved a debtor corporation engaged in the business of operating hotels. The hotel premises operated by the debtor were leased from another corporation. The lease between the debtor and the corporation provided that in the event of a default by the debtor in the terms of the lease, the corporation would have the right to terminate the lease upon giving the debtor five days notice to quit. The corporation terminated the lease by giving the requisite five-day notice. The debtor filed for corporate reorganization and the corporation filed a motion for possession of the leased premises. The motion was denied by the district court. The Fifth Circuit affirmed, stating:

PREIT contends that the lease had terminated prior to the filing of the corporate reorganization proceeding and that it is entitled to possession because the trustee had no right or interest in possession of the leased premises.

We are unable to agree with this contention. The law of Louisiana requires legal proceedings against a delinquent lessee and a judgement of the proper court before possession may be obtained. Thus the cancellation of the lease for nonpayment of rent is not effective until a court has ordered termination and granted possession. No judicial proceedings having been instituted in this case prior to the filing of the petition for corporate reorganization, the trustee succeeded to the pos-

session of the debtor upon his appointment by the district court.

It was within the equity power of the district court, under the circumstances here, to decline forfeiture of the lease and continue the trustee in possession. Reorganization of the hotel would not be possible if the trustee were deprived of possession of the hotel premises, furniture and equipment. Necessarily any opportunity which the creditors might have to recover would be substantially impaired, if not lost altogether.

515 F.2d at 914 (citations omitted).

■ *Fontainebleau* involved a nonresidential lease of real property and was decided before the enactment of the Bankruptcy Code's prohibition against the assumption of nonresidential leases of real property terminated under nonbankruptcy law before bankruptcy.[2] The Fifth Circuit held that since no state court judgement had been entered directing restoration of the premises to the landlord, the trustee could, in effect, reinstate the lease, despite the fact that the lease had been terminated under state law prepetition. The basis of the court's ruling was that to hold otherwise would be to doom the reorganization effort to failure and thereby frustrate the purpose and utility of the corporate reorganization provisions of the Bankruptcy Act.

■ While the number of creditors and the size of the debts involved in the present case are significantly less than those in *Fontainebleau*, the policy considerations are the same and the issues are equally important. Consumer bankruptcy is intended to provide the honest debtor with a fresh financial start in life. Chapter 13 allows the debtor the opportunity to gain that fresh start, and, at the same time, pay all or a portion of his debts. Chapter 13 is good for both debtors and creditors, and has, for that reason, been enthusiastically promoted and encouraged since its advent by Congress. *In re Bradford*, 268 F.Supp. 896, 898 (N.D.Ala.1967). For both to benefit, the individual debtor, the

same as the corporate debtor, must be able to reorganize.

■ If Chapter 13 is to provide an effective means for this consumer debtor reorganization, it must provide for the temporary retention by those debtors of their dwellings. Section 1322(b)(7) together with section 365, were created by Congress to fulfill that fundamental requirement. If this Court, however, were to adopt the construction of section 365 pressed by the Movant, so that a Chapter 13 debtor would be unable to cure and assume a residential lease after that lease has been terminated, then sections 365 and 1322(b)(7) would be of no use or benefit to Chapter 13 consumer debtors in most cases and the goal of Chapter 13 in consumer cases would be substantially frustrated.

In *In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994), the Court of Appeals for the Eleventh Circuit held that section 1322(b)(5), which enables a Chapter 13 plan to "provide for the curing of any default," allows a Chapter 13 debtor to modify a confirmed Chapter 13 plan to cure a postconfirmation default in the debtor's payment on a note secured by a mortgage on the debtor's home pursuant to section 1322(b)(5) with the postconfirmation arrearage to be paid under the modified plan. The court reasoned that, according to its plain language, the operation of the statute was not limited to prepetition defaults and that an interpretation of the statute which included postpetition defaults furthered the Congressional intent that Chapter 13 be used by financially distressed homeowners to salvage their homes, stating:

> Section 1322(b)(5) clearly states that a plan may provide for the curing of any default. Congress could have easily inserted the word prepetition to modify default but failed to do so. The omission is significant. The plain meaning of § 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan. Thus, § 1322(b)(5) would permit cure of postconfirmation defaults.

---

**2.** The case cannot be distinguished from the case at hand on the basis of a difference between Alabama and Louisiana lease law. In both states, a lease may be terminated by notice, but possession may only be recovered by way of an unlawful detainer action. *See, e.g., Lilly v. Angelo*, 523 So.2d 899 (La.Ct.App.1988).

Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home. As a result, courts evolved a solution, granting injunctions against foreclosure on mortgages during the pendency of Chapter XIII cases where foreclosure would defeat the purposes of the plan, and allowing debtors to cure defaults on their mortgages while maintaining current payments. Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults. Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes.

12 F.3d at 1010 (citations omitted).

The court's reasoning in *Hoggle* bolsters this Court's interpretation of section 1322(b)(7) and section 365. Congress could have easily inserted the word *residential* along with nonresidential to modify *lease* in section 365(c)(3) but failed to do so. Or Congress simply could have omitted the word "nonresidential" in section 365(c)(3). Furthermore, a construction of section 365 which allows assumption of unexpired leases which have been terminated under state law advances the court of appeals described Congressional goal to encourage the expanded use of Chapter 13, and also provides the flexibility for those who rent to preserve their residences, the same as homeowners. Surely, Congress did not intend to protect homeowners while ignoring the plight of home renters.

## III. THE TERMS OF THE LEASE AND THE PROMPT CURE AND ADEQUATE ASSURANCE OF FUTURE PERFORMANCE REQUIREMENTS OF SECTION 365 PROVIDE AMPLE PROTECTION TO THE LESSOR

■ A residential lease in this geographical area commonly runs for a term of one year and provides for automatic renewal at the end of each one year period, with the reservation that either party may elect not to renew upon giving the other party notice. Nonrenewal results in expiration of the lease at the end of the one year term during which the notice is given. While the Bankruptcy Code authorizes a debtor to assume an unexpired lease by curing a default, this Court knows of no legal basis upon which a lessor can be required to renew a debtor's lease once the lease term has expired. The lessor's exposure will ordinarily be limited to the remainder of the one year term during which the bankruptcy case is filed, unless the lessor decides to allow the lease to be renewed.

■ In order to assume a residential lease, the Chapter 13 debtor must provide adequate assurance of (a) prompt cure of any default in the lease, (b) compensation for pecuniary loss resulting to the lessor from default in the lease, and (c) future performance under the lease. Cure of a default in the payment of rent under the lease means that the debtor must pay the rent arrearage in full. Compensation for pecuniary loss ordinarily means that the debtor must pay any accrued costs of collection provided for under the lease in full. In order to constitute adequate assurance, the debtor must propose to pay the rent arrearage and lessor's collection costs promptly. There is no definition of "prompt" in the bankruptcy code. Logic dictates, however, that any rent arrearage and the lessor's collection costs must be paid prior to the renewal date of the lease. As a practical matter, a debtor will seldom be benefitted by the assumption of a lease where the remainder of the term of the lease is short. As a rule of thumb, this Court adopts a time period of six months, absent evidence that a different period should be

required. If the debtor cannot pay the arrearage and costs in six months, then it may be that curing the lease is not in the debtor's best interest and will not result in a sufficient benefit to the debtor to justify the burden necessary to effect the cure.

█ The adequate assurance of future performance requirement will be met if a debtor's proposal contains three basic safeguards. First of all, the debtor must earn sufficient disposable income to allow him to pay the arrearage and costs within the time period specified, in addition to his other plan payments. Second, the debtor must make current rent payments as they fall due. Third, the lessor must be given a quick and relatively inexpensive avenue for obtaining relief from the stay if the debtor either defaults on any of the current rent payments or any prompt cure payment.

█ The Movant's final argument is that the lease would not have been extended to the debtor had there not been a co-signer on the lease and, since the co-signer has defaulted on the lease also, the debtor cannot provide adequate assurance of future performance, at least not in the manner contemplated between the parties when the lease was executed. The Movant does not contend, however, that the Debtor could have contemplated the simultaneous financial demise of his co-signer or that there was any fraud involved in obtaining the lease by use of the co-signer. Also, section 365(b)(1)(C) is prospective in its perspective, and looks to the debtor's present and future ability to make the payments required under the lease rather than the past relationship or arrangement between the parties. Furthermore, the Court is confident that the safeguards provided below will maximize the Movant's interests during the pendency of the Chapter 13 case.

## IV. CONCLUSION

The assumption of an unexpired residential real property lease by a Chapter 13 debtor is an onerous proposition, which, at best, affords the debtor only temporary housing. Be that as it may, sections 1322(b)(7) and 365 serve a Congressionally mandated purpose by providing assistance to many financially troubled debtors. To fully effectuate that purpose, however, the bankruptcy court must heed the plain language of the statutes so as to include within their operation those persons whose leases have been terminated under nonbankruptcy law. To construe the statutes in a manner that would exclude from their operation unexpired leases which have terminated under nonbankruptcy law would be counter to the design of Chapter 13.

In conformity with the above discussion, it is ORDERED that the Debtor may assume the unexpired lease upon the following terms and conditions:

1. Within ten days of this order, the Debtor will pay to Mr. David J. Chastain, the attorney for the Movant, the rent due for August and September, 1994.[3]

2. The Debtor must make all rent payments for the months following September, 1994, in accordance with the terms of the lease.

3. *In addition to* the payments required under the Debtor's Chapter 13 plan which was confirmed by order of this Court dated September 9, 1994, the Debtor shall pay to the Chapter 13 trustee the sum of $112.88 as a "cure payment" on the first day of each month for a period of six months beginning on October 1, 1994. The sum indicated represents one sixth of the total damages of $655.00 incurred by the Movant as a result of the Debtor's default in the terms of the lease, as stipulated between the parties, including rent arrearage, late charges and collections costs, *plus* the Chapter 13 Trustee's percentage fee calculated at the rate of 3.4 per cent. Upon receipt of the funds, the Chapter 13 trustee shall forthwith distribute the funds as $109.04 to Mr. David J. Chastain, the attorney for the Movant, and $3.84 to the Standing Chapter 13 Trustee.

---

3. At the hearing on August 15, 1994, the Court instructed the Debtor to pay to his counsel, who would hold in trust, the August rent.

4. In the event the Debtor fails to make the payment required pursuant to the paragraph numbered 1 above, the Movant will be and is hereby granted relief from the stay without further or additional orders of this Court for the purpose of pursuing any remedies available under state law to recover possession of the subject premises.

5.(A) In the event the Debtor fails to make current rent payments and concurrent "cure payments" as required pursuant to the paragraphs numbered 2 and 3 above within ten days of the dates specified for the making of those payments in either the lease instrument or this order, the Movant will be and is hereby granted relief from the stay without further or additional orders of this Court for the purpose of pursuing any remedies available under state law to recover possession of the subject premises.

(B) If the Debtor makes payments to the Chapter 13 Trustee which are less than the total of his plan payments and the "cure payment," the Trustee shall apply the funds received first to the plan payment and the remainder to the "cure payment." This situation will of course create a default for the Debtor and the relief from stay provided for in paragraph 5(A) above will become effective.

6. In the event the Debtor's Chapter 13 case is dismissed prior to the Debtor having made all of the payments specified in the paragraph numbered 3 above, the Movant will be and is hereby granted relief from the stay without further or additional orders of this Court for the purpose of pursuing any remedies available under state law to recover possession of the subject premises.

7. The lease between the parties is hereby reinstated and the termination of the lease is hereby declared to be null and void.

8. Any debt owed by the Debtor to the Movant for monetary damages resulting from default in or rejection of the lease shall be determined solely by means of this order or a proof of claim in this bankruptcy proceeding. Unless otherwise modified by order of the bankruptcy court or terminated by operation of law, the stay shall remain in effect to preclude the adjudication or collection of any such debt outside of this bankruptcy proceeding.

It is further **ORDERED** that the Motion for Relief From the Automatic Stay filed by Property Managers, Inc., is **DENIED.**