**In re Laura Ann STOLTZ, Debtor.**

**Bankruptcy No. 97–11879 FGC.**

United States Bankruptcy Court.
D. Vermont.

May 13, 1998.

---

R. Rice, Cohen & Rice, Rutland, VT, for creditor, Brattleboro Housing Authority.

G. Walsh, Vermont Legal Aid, Inc., Springfield, VT, for Debtor.

## MEMORANDUM OF DECISION DENYING MOTION TO ASSUME

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtor, through a plan of reorganization, moves to assume a residential real property lease Creditor claims was terminated prepetition. We deny Debtor's Motion to Assume [1] because the lease expired before Debtor filed this chapter 13 case.

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (M), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. Rule 52, as made applicable by Fed.R.Bkrtcy.P. Rule 7052.

## FACTUAL AND PROCEDURAL HISTORY

Debtor and her family reside in an apartment owned and operated by Creditor, a landlord offering federally funded housing to the public in Brattleboro, Vermont. Debtor and Creditor entered into a month-to-month lease agreement on August 1, 1996, whereby Debtor agreed to $560.00 per month to rent 30 Moore Court. The lease provided for automatic renewal each month if Debtor paid rent in advance on the first day of each month and complied with listed tenant duties.

Debtor fell behind in her rent, and on August 5, 1997, under the lease provisions and applicable federal law pertaining to housing authorities, Debtor received a certified letter informing her of Creditor's intention to terminate the lease for non-payment of rent. The letter gave Debtor until September 1, 1997, to redeem and reinstate the lease. After Debtor failed to redeem by that date, Creditor initiated an eviction proceeding in the Windham County Superior Court. On December 23, 1997, Creditor was granted judgment for possession and awarded costs in the amount of $4,838.73. The judgment order indicated that a writ of possession was to be issued on December 31, 1997. Debtor filed a chapter 13 petition and plan on December 26, 1997. In the plan, Debtor proposes to cure her default and assume the lease. Creditor objected to the assumption of the lease and moved for relief from stay and the co-debtor stay to continue the eviction and regain possession.

## DISCUSSION

■ An unexpired residential real property lease is generally assumable under the Bankruptcy Code. 11 U.S.C. § 365(d)(2). An unexpired lease in default may be also assumed if a debtor performs certain actions mandated by § 365(b)(1). To assume an unexpired lease in default, a debtor must cure the default or provide adequate assurance of a prompt cure, provide compensation or adequate assurance of prompt compensation for any actual pecuniary loss associated with the default, and provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1). An *expired* lease, on the other hand, in default or not, may not be assumed. 11 U.S.C. § 365(a); *In re Talley*, 69 B.R. 219, 222 (Bkrtcy.M.D.Tenn.1986).

■ Creditor argues that Debtor's lease terminated on September 1, 1997, the date Debtor failed to redeem, and she is precluded from assuming the lease. Whether a residential real property lease was terminated prior to bankruptcy is a question of state law. *In re Kong*, 162 B.R. 86, 91 (Bkrtcy. E.D.N.Y.1993).

■ The Vermont legislature offered tenants a certain degree of protection by setting out procedures necessary for a landlord to terminate a lease. Title 12 V.S.A. ch. 169. The statute requires a judicial determination as to the right to possession of the leased premises prior to issuance of a writ of possession to physically eject the tenant. 12 V.S.A. § 4854. If the court finds the landlord entitled to possession, a writ of possession will be issued. *Id.* Until a final judgment is issued, however, a tenant may discontinue an eviction action and rehabilitate a lease by depositing the full amount in arrears with the court. 12 V.S.A. § 4773. This tenant remedy remains viable until a final judgment is issued, thus, it is critical to know at what point judgment for possession becomes final.

The Vermont Supreme Court recently addressed this issue in *Tucker v. Bushway*, —— Vt. ——, 689 A.2d 426 (1996). The Court held that a judgment for possession does not become final under Vermont law until a writ of possession is issued, noting that until a judgment for possession is final, a tenant may discontinue the proceeding by depositing the arrears into court and regain possession. *Id.* This tenant right is finally extinguished upon the issuance of the writ. "Once the landlord obtains a writ of possession, it would be irrational to allow the tenant to regain entry to the property." *Tucker v. Bushway, supra* at 427; *see also generally In re Couture*, 202 B.R. 837 (Bkrtcy.D.Vt. 1996).

■ Although Creditor obtained a judgment for possession on December 23, 1997, a writ of possession was not to be issued until December 31, 1997. Debtor filed her peti-

tion on December 26, 1997, five days prior to the date a writ of possession would have been issued. Under Vermont law, a residential real property lease is terminated upon issuance of a writ of possession, and a tenant retains the remedy of redemption until that time. Accordingly, we conclude that Debtor's lease was not terminated on December 23, 1997 when she filed a petition under chapter 13.

■ We draw a distinction, however, between "termination" and "expiration" and note that for a lease to be assumable under the Code, it must be *unexpired.* Our brother Cohen in Alabama has provided an excellent discussion of the distinctive meanings of each term. *In re Morgan,* 181 B.R. 579 (Bkrtcy.N.D.Ala.1994). We need only say here that in the context of a lease, termination means *"come to an end prior to its anticipated term "*, and expiration refers to *"a natural ending according to lease terms."* *See generally* In re Morgan, *supra.* While Debtor's lease was not terminated pre-petition, we find that her lease expired pre-petition.

In this case, Creditor is bound by federal regulations controlling lease agreements for use by housing authorities. The Code of Federal Regulations prohibits housing authorities from either terminating or refusing to renew a lease "other than for serious or repeated violation of material terms of the lease such as failure to make payments due." 24 C.F.R. § 966.4(*l*)(2)(i). Subsidized housing leases have been found to be automatically renewable at the end of the stated term without refusal to renew on the landlord's whim. *Lopez v. Henry Phipps Plaza South, Inc.,* 498 F.2d 937, 943 (2nd.Cir.1974). Section 966.4(*l*)(2)(i), however, permits a landlord to refuse to renew for cause, including failure to pay rent. 24 C.F.R. § 966.4(*l*)(2)(i). The Code also requires a housing authority lease to contain "provisions for renewal, if any." 24 C.F.R. § 966.4(a)(1). This section makes clear that a lease of this type may require a tenant to act affirmatively to renew a lease. The lease in question contains the following provision for renewal:

The terms of this lease shall commence on August 1, 1996, and shall continue for the remainder of said month of August and for the term of one month thereafter; provided, however, that **in the absence of a notice to terminate,** as provided in section 10(sic) hereinafter, **the terms of this lease shall be renewed for successive terms of one (1) calendar month upon payment each month of the rent as more specifically set forth in section 3(sic) hereinafter and upon compliance by the Tenant with all the provisions of this case.** Lease, sec. 2, p. 1 (emphasis added).

For Debtor to renew this lease, she must pay rent in advance on the first day of each month and comply with all provisions of the lease. Nothing in the Federal regulations prohibit this type of provision in a housing authority lease. 24 C.F.R. § 966.6. In fact, the Code of Federal Regulations section pertaining to grounds for renewal speaks directly to this issue.

(2) Grounds for termination.
(i) The PHA **shall not** terminate or **refuse to renew** the lease **other than for serious** or repeated **violation of material terms of the lease such as failure to make payments due under the lease** or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause. 24 C.F.R. § 966.4(*l*)(2)(i) (emphasis added).

A creditor may not refuse to renew a debtor's lease other than for serious violation of material terms such as failure to make payments due under the lease and other good cause.

■ The stated purpose of § 966 *et seq.,* is to "prescribe the provisions that shall be incorporated in leases by public housing agencies (PHAs) for dwelling units assisted under the U.S. Housing Act of 1937." 24 C.F.R. § 966.1. The Act, as codified in Title 42 U.S.C. § 1437, cites as its purpose to provide "decent, safe, sanitary dwellings for families of lower income and ... to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. § 1437.[2] While Congress undoubtedly in-

---

**2.** 42 U.S.C. § 1437 is applicable to all public

housing and 24 C.F.R. § 966 "is applicable to

tended to provide low income families with financial assistance and a stable environment, it would be irrational to conclude that Congress intended to force PHAs to tolerate non-paying tenants. Allowing tenants to live rent free, contrary to specific provisions contained in lease agreements, would chill a landlord's incentive to enter into programs providing low income housing. We find this contrary to Congress' intent. In fact Congress specifically permits a PHA to refuse to renew a lease for non-payment of rent. 24 C.F.R. § 966.4(*l*)(2)(i). We conclude that a public housing tenant's failure to make payments due under a lease constitutes a material violation of the provisions of the lease and is grounds for refusal to renew.

Creditor's December 23, 1997 judgment against Debtor includes $3,446 in unpaid rent. This judgment ended the lease. Accordingly, we hold that the lease expired according to its own terms when payment was not made. Tenant, however, may retain the right to discontinue the eviction proceeding in State Court by depositing the full amount of the default into court in accordance with Vermont law, but is precluded from assuming the lease under § 365(d)(2).

Confirmation of Debtor's plan, having as its sole purpose assumption of the residential real property lease, is denied as submitted. Her goal thwarted, Creditor's motions for relief from stay are granted because neither Debtor nor co-debtor have any equity in the leased property, and the property is not necessary to an effective reorganization. Creditor shall settle an order conforming to this memorandum within 10 days of its issuance.

all such dwelling leases entered into directly by PHAs with tenants, and is not applicable to Section 23 and Section 10(c) leased housing projects, the Section 23 Housing Assistance Payments Program, and the Section 8 Housing Assistance Payments Program, where the owners enter into leases directly with the tenants." 42 U.S.C. § 1437, 24 C.F.R. § 966.1.