Laura Ann STOLTZ, Appellant,

v.

BRATTLEBORO HOUSING AUTHORITY, Appellee.

No. Civ. 00–CV–450.

United States District Court, D. Vermont.

Feb. 14, 2001.

Geoffrey F. Walsh, for plaintiff.

Rebecca A. Rice, Little Rock, AR, for respondent.

*Memorandum of Decision*

MURTHA, Chief Judge.

Debtor Laura Ann Stoltz appeals from an order of the United States Bankruptcy Court for the District of Vermont (Brown, J.) which lifted the Bankruptcy Code's automatic stay thereby permitting her landlord, Brattleboro Housing Authority (BHA), to evict her from her publicly subsidized apartment. Stoltz challenges the bankruptcy court's order on grounds that the bankruptcy judge erroneously construed the effect of the Code's anti-discrimination section, 11 U.S.C. § 525, to the facts of her case. For reasons set forth below, the bankruptcy court's order is vacated and the automatic stay is reinstated.

I. *Background*

A. *Factual Background*

Except for matters that are not relevant to the outcome of this motion, neither party disputes the following facts:

Laura Ann Stoltz and her three children have lived in a government subsidized housing development, Moore Court apart-

ments, in Brattleboro, Vermont, since 1993. BHA owns and manages Moore Court. Beginning in 1993, Stoltz and BHA entered into a month-to-month lease, requiring payments on the first of the month of approximately $560. BHA renewed the lease on a monthly basis, contingent upon payment of the rent. Stoltz signed renewal leases at regular intervals; she signed the most recent lease agreement on August 1, 1996.

In the summer of 1997, Stoltz failed to make the July and August rental payments. As a result, on August 1, 1997, BHA notified Stoltz that it was terminating the lease agreement on September 1, 1997. In October 1997, BHA commenced an ejectment action against her in Vermont Superior Court. On December 18, 1997, the superior court granted judgment in favor of BHA in the amount of $4253.73 and awarded BHA possession of the apartment. Entered on December 23, the superior court's order provided that a writ of possession would issue on December 31, 1997. On December 26, 1997, Stoltz filed a chapter 13 bankruptcy petition and reorganization plan, thereby staying the issuance of the writ.

Subsequently, Stoltz remained current on the rent during the majority of the two year period following her chapter 13 filing. She once again experienced financial difficulties, however, in October 1999 and defaulted on payments in October, November, December and January. On January 20, 2000, BHA filed a Motion for Relief from Stay after Stoltz failed to make these payments.

### B. *Procedural Background*

At the time that Stoltz filed a chapter 13 petition for relief under the Bankruptcy Code on December 26, 1997, she also moved to assume the lease. This action stayed any further proceedings connected with the eviction. BHA opposed Stoltz's motion and moved for relief from automatic stay pursuant to 11 U.S.C. § 362(d) in the Federal Bankruptcy Court for the District of Vermont.

By order issued June 3, 1998, Bankruptcy Judge Frank Conrad refused to confirm Stoltz's chapter 13 plan, rejected her request to assume the lease, and granted relief to BHA. Judge Conrad found that Stoltz could not assume the lease because under the terms of the agreement, the lease expired when Stoltz failed to make her rent payments, leaving no lease to be assumed. *See In re Stoltz*, 220 B.R. 552, 556 (Bankr.D.Vt.1998). In addition, Judge Conrad denied Stoltz's motion to assume the lease because he found that Stoltz had filed her chapter 13 reorganization plan for the sole purpose of assuming the lease. In granting BHA's request to lift the automatic stay, the bankruptcy court found that Stoltz had no equity in the lease property and it was, therefore, unnecessary to reorganize.

Finding that Stoltz's lease had not expired because the writ of possession had not been executed and, thus, Stoltz retained a possessory interest in the lease, this Court reversed the bankruptcy court's decision and remanded the case to determine whether alternative bases supported the denial of Stoltz's assumption motion. This decision implicitly reversed the bankruptcy court's lifting of the automatic stay. On remand, the bankruptcy court construed the Court's instructions as a final ruling. BHA appealed to the United States Court of Appeals for the Second Circuit and the bankruptcy court postponed the hearing on Stoltz's chapter 13 plan pending the appeal.

On November 29, 1999, the Second Circuit affirmed this Court's decision, finding that only unexpired leases are assumable and because, under Vermont law, a judgment for possession is not final until the court issues the writ of possession, the lease had not as a matter of law "expired," and Stoltz maintained her right to cure the default and remain lawfully in possession of the apartment. *Brattleboro Hous. Auth. v. Stoltz (In re Stoltz)*, 197 F.3d 625,

629–31 (2d Cir.1999). The Second Circuit did not address whether a public housing tenant would be protected by 11 U.S.C. § 525 from eviction by a governmental housing authority.

After the bankruptcy court accepted her chapter 13 petition reorganization plan, Stoltz made payments of $1433.63 toward her past due payments of approximately $3400. In February 2000, Stoltz requested conversion of her chapter 13 case to one under chapter 7. At the conclusion of her chapter 7 case, Stoltz obtained a discharge of all her pre-petition debts by order of Bankruptcy Judge Robert Littlefield on February 11, 2000 with an effective conversion date of February 7, 2000. (Bankruptcy Court Paper 122–1.)

Subsequently, BHA sought a relief from stay in order to commence eviction proceedings against Stoltz based on the arrearage that occurred in late 1999 and January 2000. The bankruptcy court granted BHA's motion, finding that "tenants who have leases with government agencies are [not] protected from eviction by the provisions of 11 U.S.C. § 525." *In re Stoltz*, No. 97–11879, slip op. at 5 (Bankr.D.Vt. Sept.18, 2000).

## II. *Discussion*

### A. *Jurisdiction*

■ This Court has jurisdiction over an appeal of a Bankruptcy Court's order entered in a "core proceeding" (i.e., a proceeding which involves purely matters of bankruptcy) pursuant to 28 U.S.C. § 158(a)(1). Motions to terminate, annul or modify an automatic stay are considered core proceedings under 28 U.S.C. § 157(b)(2)(G). An order lifting the Bankruptcy Code's automatic stay provision is final and appealable. *Tatko v. Donahue (In re Donahue)*, 232 B.R. 610, 613 (D.Vt. 1999) (citing *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 885 (2d Cir.1996)).

### B. *Standard of Appellate Review*

■ A bankruptcy judge's findings of fact may not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013; *Shugrue v. Air Line Pilots Assoc. Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990); *Couture v. Burlington Hous. Auth. (In re Couture)*, 225 B.R. 58, 61 (D.Vt.1998). The Court reviews questions of law *de novo*. *Fed. Communications Comm. v. NextWave Pers. Communications, Inc. (In re NextWave Pers. Communications, Inc.)*, 200 F.3d 43, 50 (2d Cir.1999) (per curiam).

■ A bankruptcy judge's decision to lift an automatic stay is reviewable only for an abuse of discretion. "Reviewable-for-abuse-of-discretion, however, does not mean unreviewable." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir.1999). An abuse of discretion "may take the form of the application of erroneous legal procedures [or] findings of fact which are clearly erroneous." *In re Couture*, 225 B.R. at 61 (citations omitted).

### C. *Legal Consequences of Rejection of the Lease*

■ A chapter 7 trustee's failure to assume or reject the debtor's lease within the 60 days required by § 365(d)(1) results in an abandonment of the lease back to the debtor. *See* 11 U.S.C. § 365(d)(1). Lease rejection is a "bankruptcy concept that determines whether the estate will administer the lease asset." *Id.* at 64. Rejection does not terminate an unexpired lease, but merely removes it as property of the estate. *Id.* Because the lease is no longer estate property, "bankruptcy courts generally grant private landlords relief from the stay to exercise their state law remedy of ejectment" when the debtor has defaulted on the rejected lease. *Id.* "After the termination of the automatic stay which comes into place at the time of discharge under chapter 7, landlords can enforce their rights under the lease other than the right to collect the discharged debt." *In*

re Bacon, 212 B.R. 66, 69 (Bankr.E.D.Pa. 1997).

The bankruptcy court properly found (and neither party disputes) that Stoltz's case conversion from one under chapter 13 to one under chapter 7 effectively discharged all rental payment arrearage, including any rental debt incurred during the period between petition and conversion. In re Stoltz, No. 97–11879, slip op. at 4; see also 11 U.S.C. 348(d).

■ Discharge of a debt in bankruptcy does not constitute payment of rental fees or the extinguishment or cancellation of a debt. In re Hepburn, 27 B.R. 135, 136 (Bankr.E.D.N.Y.1983). Despite the discharge in bankruptcy, a landlord may still avail itself of its statutory remedies to recover possession of the premises for nonpayment of rent. See, e.g., In re Touloumis, 170 B.R. 825, 830 (Bankr.S.D.N.Y. 1994).

D.  *Effect of Bankruptcy Code § 525 on Provisions of § 365*

1.  *Construction and Interplay of Statutory Sections*

■ Even though § 365 permits a landlord to resort to eviction where a debtor tenant fails to repay rent discharged in a bankruptcy proceeding, public housing tenants may be protected from eviction under § 525 of the Bankruptcy Code.[1] Section 525 provides in relevant part:

[A] governmental unit may not deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, ... a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, ... solely because such a bankrupt or debtor is or has been a

debtor under this title or a bankrupt or debtor under the Bankruptcy Act, ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

■ The list of grants is not exhaustive or exclusive because Congress intended that the provision should address any form of discrimination that conflicted with the express policies underlying the Bankruptcy Act. See Gibbs v. Hous. Auth. of New Haven (In re Gibbs), 9 B.R. 758, 764 (Bankr.D.Conn.1981). "Section 525(a) prohibits actions by governmental or quasi-governmental organizations from discriminating against debtors in ways which affect the debtor's fresh start." In re Hobbs, 221 B.R. 892, 894 (Bankr.M.D.Fla. 1997). A public housing authority is a "governmental unit" and, thus, subject to the strictures of § 525. See 11 U.S.C. § 101(27); see also Gibbs, 9 B.R. at 764.

■ In this case, the bankruptcy court concluded that the "more specific language of § 365(d)(1) must be read to trump the general provisions of § 525(a)" and found that § 365 overrode § 525 because nothing in the "Bankruptcy Code, legislative history, or principles of statutory interpretation" could be construed to contradict this conclusion. In re Stoltz, No. 97–11879 at 7; see also Bacon, 212 B.R. at 74, n. 16.

This conclusory statement is unsupported by an overview of the case law. A number of courts have struggled with the interplay between § 525 and § 365, especially in the context of tenant debtor and public housing landlord disputes. See, e.g., Johnson v. Chester Hous. Auth. (In re Johnson), 250 B.R. 521, 530 (Bankr. E.D.Pa.2000) (refusing to follow Bacon decision because it effectively holds that public housing agencies are exempt from

---

1. Section 365(d)(1) reads as follows: "In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected."

§ 525(a)); *Couture v. Burlington Hous. Auth. (In re Couture),* 225 B.R. 58 (D.Vt. 1998) (lift of automatic stay resulting in public housing debtor's eviction violated § 525(a)); *In re Day,* 208 B.R. 358 (Bankr. E.D.Pa.1997) (§ 525 protects public housing tenant from eviction on basis of unpaid rent discharged in bankruptcy); *Curry v. Metropolitan Dade Co. (In re Curry),* 148 B.R. 966 (S.D.Fla.1992) (public housing authority's eviction efforts violated § 525(a)'s protection against discrimination); *In re Szymecki,* 87 B.R. 14 (Bankr.W.D.Pa.1988) (Code prohibits public housing authority from evicting debtor-tenant on basis of discharged prior rent obligation); *Sudler v. Chester Hous. Auth. (In re Sudler),* 71 B.R. 780 (Bankr.E.D.Pa.1987) (same); *In re Gibbs,* 9 B.R. 758 (Bankr.D.Conn.1981) (relying on legislative history to find that § 525(a) protects public housing tenants from eviction on bases of discharged unpaid rental obligations). *But see, In re Bacon,* 212 B.R. 66 (Bankr.E.D.Pa.1997) (finding that § 525(a) only prohibits public housing authority from discriminating against debtor tenant's right to access subsidized housing in the future); *In re Hobbs,* 221 B.R. 892 (Bankr.M.D.Fla.1997) (following reasoning in *Bacon* ), *Hous. Auth. of City of Decatur v. Caldwell (In re Caldwell),* 174 B.R. 650 (Bankr.N.D.Ga. 1994) (refusing to adopt *Gibbs* reasoning). Clearly, each of these decisions was based on the various courts' construction and application of the Bankruptcy Code, statutory interpretation, and, in some cases, legislative history.[2]

Moreover, there is nothing in the language of either provision that makes it clear that one provision "trumps" the other. Although it is true that it is a "commonplace of statutory construction that the specific governs the general," *LTV Aerospace and Defense Co. v. Thomson–CSF, S.A. (In re Chateaugay Corp.),* 198

B.R. 848, 860 (S.D.N.Y.1996) (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992)), it is difficult to reconcile this assertion when comparing the complexity of the two provisions. Finding that § 365 is more specific than § 525(a) is perplexing because Congress enacted § 525(a) in order to add a specific anti-discrimination provision to the Code based on a Supreme Court decision. *See Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (state could not frustrate the fresh start of a debtor by refusing to issue a driver's license because of an unpaid debt discharged in bankruptcy).

With this additional provision, Congress reinforced the fundamental fresh start theory of bankruptcy law embodying the principle that the Bankruptcy Code is intended to permit the honest debtor to receive a new start in life free from debt. *See* 11 U.S.C. § 727; *see also Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (bankruptcy law "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."); *see also Perez,* 402 U.S. at 637, 91 S.Ct. 1704 (striking down section of state statute that conflicted with the fresh start policy).

Although "specificity" is not easily measured, because Congress acted to codify a judicial holding that addressed a specific set of facts and because it fashioned the provision to compel only "governmental units" to take measures to prevent interference with a debtor's fresh start, § 525(a) appears, at very least, to be applicable specifically, whereas § 365 applies

---

2. Oddly, although the *Bacon* court came to an identical conclusion as the *Stoltz* court, that court also noted that "there [has been] a diversity of analytical underpinnings to the conflicting decisions on the applicability of

§ 525(a) to prevent eviction of a public housing tenant based on failure to pay a dischargeable debt." *In re Bacon,* 212 B.R. at 73.

generally. In this sense, § 525(a) is the more specific of the two provisions and should, therefore, take precedence over § 365.

### 2. *Uniform Treatment of § 525(a)*

The bankruptcy court, following the reasoning in *Bacon* determined that, as a public housing tenant, Stoltz's rights under § 525(a) could be bifurcated into two portions: a protected "grantor" portion (the right to lease a federally subsidized residence and a right to pay reduced rent based on these subsidies) and an unprotected "creditor" portion. *See In re Stoltz*, No. 97–11879, slip op. at 9. As such, the bankruptcy court concluded that " § 525(a) does not require government landlords to reinstate leases that are in default or authorize courts to allow Debtors greater rights under a lease after they default, solely because the landlord is a governmental entity." *Id.*

The *Bacon* court, however, based its analysis on decisions that are factually and legally distinguishable from the issue here: whether § 525(a) of the Code prevents the Court from lifting the automatic stay and thus permits a public housing authority to evict a debtor tenant. For instance, the *Bacon* court relied on dicta in *In re Lutz*, 82 B.R. 699 (Bankr.M.D.Pa.1988), to suggest that § 525(a) would only be applicable where the evidence indicated that a governmental landlord had engaged in discriminatory conduct in its refusal or reluctance to grant housing benefits to tenants with a history of bankruptcy debt discharge. *In re Bacon*, 212 B.R. at 72.

Even though the issue before the *Lutz* court did not pertain to § 525(a) because it involved a private landlord and, moreover, the remedy sought by the plaintiff in *Lutz* went well beyond the scope of protection offered by § 525(a), the *Bacon* court looked to "certain general principles"

enunciated by the *Lutz* court in its consideration of § 525(a). *In re Bacon*, 212 B.R. at 74. The *Bacon* court observed that the application of these principles limited "similar grant" protection to those instances where the issue is not one of collecting discharged debt, but instances where the grantor refuses "to deal with the debtor because of his bankruptcy and its consequences." *Id.* Although the anti-discriminatory provisions of the Code do not apply to private landlords, the *Bacon* court extended the dicta in *Lutz* to treat public housing authorities as two separate types of governmental entities: creditor and grantor of a public benefit. *Id.* at 75.

The *Bacon* court went on to describe discriminatory conduct as "withholding various grants and privileges as a means of coercing payment of discharged debt." *Id.* at 73. Although this definition may not be complete or wholly accurate, it is difficult under this definition to conclude that evicting a public housing tenant for failure to pay discharged debt would not be discriminatory. To arrive at the conclusion that an eviction is merely the housing authority acting to enforce the terms of the lease contract and not an act of discrimination, as the bankruptcy court in this instance has done, does not logically follow from the *Bacon* court's definition of discrimination.

The *Bacon* court also looked to *In re Collins*, 199 B.R. 561 (Bankr.W.D.Pa. 1996), to support the idea of a housing authority's dual governmental roles as creditor and grantor.[3] The *Collins* court found that extending the protective provisions of § 525(a) would unintentionally result in excusing debtors from the cure provisions of § 365 and would result in a "windfall" for the debtor. The court concluded that § 525(a) effected the housing authority only in so far as it would be required post-eviction to provide an identical housing subsidy to the debtor should a

---

**3.** *Bacon* also considered *In re James*, 198 B.R. 885 (Bankr.W.D.Pa.1996), in its analysis. The court in *James*, however, did not address the issue of dual roles, but based its decision

to lift the stay on its conclusion that § 365 "trumped" the more "general" provisions of § 525(a). As indicated above, this Court reaches a different conclusion.

subsidized space become available in the future.

In amending the Bankruptcy Act to include an anti-discrimination provision, Congress specifically noted that the provision's intent was to develop the *Perez* rule. The Senate Report indicates that Congress added § 525 to "permit further development [of the rule] to prohibit actions by governmental or quasi-governmental organizations that ... can seriously affect the debtors' livelihood or fresh start." S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787. The report thus clearly indicates that Congress intended that the section not be read narrowly. Therefore, even though the bankruptcy court found that a broad application of § 525(a) would frustrate other provisions of the Code that protect governmental creditors, Congress clearly intended to expand debtors' protections, not to narrow them, in order to hinder, where possible, any negative impact on a debtor's livelihood or fresh start. It seems particularly unlikely that Congress would not have viewed eviction as a substantial obstacle to a debtor's fresh start.

Moreover, Congress recognized that "[m]ost bankruptcies are caused by circumstances beyond the debtor's control" and concluded that "[t]o penalize a debtor by discriminatory treatment as a result is unfair and undoes the beneficial effects of the bankruptcy laws." H.R.Rep. No. 95–595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Again, Congress promulgated § 525(a) with the clear intent of advancing the underlying principles of bankruptcy law. The report's language indicates that Congress intended that § 525 should be broadly interpreted where the application of the Code would result in penalizing the debtor. Clearly, eviction is a heavy penalty to pay—especially where the debtor has

evidently made a good faith effort to repay past debt and to stay current since filing for chapter 7 relief.

This Court disagrees, therefore, with the notion of bifurcated rights under § 525(a). To interpret § 525(a) as designating two separate sets of rights is unsupported by Congress's intent and the plain language of the statute's provision. Moreover, the majority of decisions addressing this issue have refused to read § 525(a) as playing dual roles where public housing debtor tenants are at risk of eviction. Indeed, most recently, in *In re Johnson*, the bankruptcy court for the Eastern District of Pennsylvania reiterated its pre-*Bacon* views that when a governmental housing authority attempts to evict a tenant based solely on a failure to pay pre-petition rent, the "governmental benefit [ ] should be considered unitarily in all of its aspects." *Johnson v. Chester Hous. Auth. (In re Johnson)*, 250 B.R. 521, 530 (Bankr. E.D.Pa.2000).

The *Johnson* court's rationale is persuasive because it not only interprets § 525(a) by its plain terms, it also permits the provision to be applied in a practical and equitable manner. *Id.; see also In re Sudler*, 71 B.R. at 787. The *Johnson* court observed that the "unprecedented" theoretical approach employed by the *Bacon* court was not the only detrimental aspect of that decision. *In re Johnson*, 250 B.R. at 530. It found that "the practical consequences" of subdividing the governmental benefit "would result in the tenant's immediate displacement." *Id.* Even though under the *Bacon* theory, the tenant remains within her rights to reapply for public housing, the reality is that during the term of years it will take before she regains a publicly subsidized residence, she is at great risk of remaining displaced.[4]

---

4. In addition, *Bacon* is distinguishable on a factual basis. That chapter 7 case involved a debtor who had incurred a large amount in pre-petition rent, but also owed a substantial amount in post-petition rent. Therefore, even

though the housing authority ostensibly sought eviction on the basis of pre-petition debt, it had a legitimate basis to argue that a blanket protection against eviction would

## 3. *Policy Concerns*

Several courts have expressed a concern that a broad reading of § 525(a) would enable public housing tenants to forego payment of rent without fear of eviction. *See, e.g., Robinson v. Chicago Hous. Auth. (In re Robinson),* 169 B.R. 171, 175 (N.D.Ill.1994). In *Hobbs,* the court offered its opinion that had Congress "intended public housing tenants to remain in possession of their apartments without requiring them to pay rent, the statutory language should provide for such a result." *In re Hobbs,* 221 B.R. at 896. These conclusions exaggerate the effect of § 525(a) on a public housing authority's legal options after a tenant has filed for relief under chapter 7. Courts, thus far, have not read § 525(a) to permit public housing tenants to live rent-free for an indefinite period of years. Indeed, because a tenant may not file under chapter 7 for six years after a chapter 7 discharge of debt, nothing prevents public housing authorities from commencing ejectment proceedings should the tenant fall into arrears during that six-year period. *See* 11 U.S.C. § 727(a)(8).

In this case, the bankruptcy court noted that for it to rule otherwise and continue the stay would "invite abuse of the bankruptcy process by debtor tenants and penalize the very entities that are trying to assist individuals in need of low income housing. In fact, it would create a reverse discrimination situation where governmental landlords would be required to give tenants who file for bankruptcy relief special privileges not available to non-debtor tenants." *In re Stoltz,* No. 97–11879, slip op. at 5. First of all, it is conceptually difficult to reconcile the notion of "special privileges" with statutory protections that prevent the eviction of low-income families from subsidized housing. Refusing to subject a family to potential homelessness does not carry an implication of special privilege.

Second, while it is true that § 525(a) permits debtor tenants to avoid payment of pre-petition unpaid rent, this protection is available to all public housing tenants should they be forced to declare bankruptcy. Therefore, because this is a protection available to any public housing tenant, the application of § 525(a) to prevent eviction based solely on unpaid pre-petition rent arrearage cannot be construed as "reverse discrimination."[5]

Finally, as noted above, because of the time requirements imposed by the Bankruptcy Act, abusing this provision would not only prove cumbersome, but would also require the tenant to engage in a long-term process of strategic decision making. This slippery slope argument seems inherently unlikely especially where the tenant is similar to Stoltz. As a single working mother of three children, one of whom has special needs, it is unlikely that she has either the time or the capacity to work the system to her advantage. In other words, given the facts of Stoltz's current situation, there is little to suggest that she purposefully declared bankruptcy as a means of permanently defrauding the government.

## Conclusion

The Court thus finds that the bankruptcy court erred in finding that 11 U.S.C. § 525(a) works only to protect the public

---

work to provide the debtor with a "head start."

In this instance, Stoltz contends, and the defendants do not challenge her contention, that she has remained current with her rent since she converted her chapter 13 case to one under chapter 7. Moreover, she made many payments to cover the rent arrearage as required under her chapter 13 plan. Under these circumstances, it is difficult to understand just how evicting Stoltz would work to prevent her from enjoying a "head start." In

fact, it seems likely that eviction would thwart any possibility of a "fresh start."

5. The phrase "reverse discrimination" generally applies where the government grants preferential treatment to benefit a particular group to the exclusion of others where the benefitted group has suffered no adverse condition justifying preferential treatment. *See, e.g., Wright Farms Constr. Inc. v. Kreps,* 444 F.Supp. 1023, 1037 (D.Vt.1977).

housing debtor-tenant's right to access subsidized housing in the future. Not only does precedent and legislative history support this decision, the real consequences of such a limited reading of the provision are simply too detrimental to the debtor's ability to survive, let alone to begin afresh, to permit the bankruptcy court's order to stand.

The bankruptcy court's order is vacated and the automatic stay is hereby reinstated.

SO ORDERED.